(February 24, 1890.)

## FIRST NATIONAL BANK OF LEWISTON v. WILLIAMS.

[23 Pac. 552.]

ACTION ON PROMISSORY NOTE—MORTGAGE TO SECURE NOTE—SURETY—AGREEMENT.—One Leland and appellant Williams made their joint and several promissory note payable to the order of one Shaw, and delivered the same to him, Williams being a surety, although that did not appear on the face of the note. As an inducement to Williams to sign the note Leland agreed and did execute a first mortgage on real estate to secure the note. Shaw, after the note and mortgage became due, assigned both to one Vollmer, who assigned them to the respondent bank. The respondent now claims the mortgage invalid, as it was not sealed; held, that by statute in force at time of giving the mortgage a seal was not necessary, hence, the mortgage was valid, and an action should have been brought to foreclose the same, and not upon the note alone, as was done, as the security was not valueless.

APPEAL from District Court, Nez Perces County.

On the thirtieth day of October, 1884, Alonzo Leland and the appellant, M. M. Williams, duly made their joint and several promissory note, payable to the order of one A. J. Shaw, six months after date, and thereafter delivered the same to the payee. The note was given for the debt of Leland, and Williams joined in it at the request of Leland, as surety only, though the fact that he was surety did not appear on the face of the note. To induce Williams to join in the making of the note, it was agreed between Leland and Williams that Leland should give to Shaw, the payee, a first mortgage on real estate to secure the note, so that he (Williams), in case Leland did not pay the note, "would only have the balance to pay that the property did not bring"; which agreement was known to Shaw, and was assented to by him at the time. A mortgage was made, on the 1st day of November, 1884, by Leland to Shaw, acknowledged on the sixth day of the same month, and recorded by said Shaw, in said county, on the next day, the 7th of November, covering one hundred and sixty acres of land therein described, the property of the mortgagor, setting out the note in full, and stating upon its face that it was "intended as a mortgage to secure payment of" this note so set out, and containing the usual power

of sale.   Whether the mortgage was delivered at the time of de-
livery of the note does not appear.   On receipt of the mortgage,
Shaw reported to Williams that it had been given to him by Le-
land.   A little over three months after the note and mortgage
fell due, in Shaw's hands, the latter assigned both note and
mortgage to one Vollmer, the president of the plaintiff, who,
on the same day, assigned them to his bank, this plaintiff.
That, at the time he received the note and mortgage from Shaw,
Vollmer discovered that the mortgage was unsealed.   The plain-
tiff brought his action against both the makers upon the note
alone, by filing his complaint against both, but did not pro-
ceed further against Leland and did proceed to a final judg-
ment against Williams only.   The answer, beside stating, in
substance, the foregoing facts (all of which appear either in
the complaint, or were proven at the trial), contains the fol-
lowing clause: "That after the mortgage to secure the note had
been recorded, two mortgages, still valid and existing, have
been executed and delivered by said Leland—the first to said
Vollmer, and the second to the plaintiff itself—both amounting
to $1,600, covering the same land described in the said mort-
gage, to secure the note, and were recorded before the commence-
ment of this action; that said two subsequent mortgages are for
the full value of said lands, and that said Leland has no per-
sonal property not exempt; and that, unless the note in suit be
paid from such real estate, this defendant will sustain damage."
This clause in the answer was by the court, on motion, stricken
out before trial, the appellant excepting to such order.   The
answer further demands that in case the defendant is held to
pay the note in suit, said Williams be subrogated by judgment
to the original rights in said mortgage of this plaintiff, and, of
course, of said Shaw.

Hawley & Reeves, for Appellant.

The surety is only bound to fulfill the promise in the sense
in which the promisee knew at the time the promisor intended
it; and it matters not in what way the knowledge of the meaning
is brought to the mind of the promisee.   (De Colyar on Guaran-
ties, 7, 8, and authorities cited; *Miller v. Stewart,* 9 Wheat.
680.)   A surety is always discharged by the laches of the cred-

itor; and, should the creditor fail to do anything which he is bound or agreed to do for the protection of the surety, then the surety is discharged. (De Colyar on Guaranties, 432 et seq.; Story's Equity Jurisprudence, sec. 324; *King v. Baldwin,* 2 Johns. Ch. 554; *Watts v. Shuttleworth,* 7 Hurl. & N. 353.) A want of diligence in taking security, or a security worthless by reason of the laches of the creditor, discharges the surety. (*King v. Baldwin,* 17 Johns. 384, 8 Am. Dec. 415; *Ex parte Mure,* 2 Cox, 63.) Any material variation of the original contract will discharge the surety. (*Meiswinkle v. Jung,* 30 Wis. 361, 11 Am. Rep. 572; *McWilliams v. Mason,* 31 N. Y. 294; *Ham v. Greve,* 34 Ind. 18; *Mellendy v. Austin,* 69 Ill. 15.) Parol evidence may be offered to show the signer of a note is in reality a surety. (*Weston v. Chamberlin,* 7 Cush. 404; *Holt v. Bodey,* 18 Pa. St. 207; *Lime Rock Bank v. Mallett,* 34 Me. 547, 56 Am. Dec. 673; *Core v. Wilson,* 40 Ind. 204; *Hubbard v. Gurney,* 64 N. Y. 457; *McMillan v. Parkell,* 64 Mo. 286.)

T. D. Cahalan and Brumback & Lamb, for Respondent.

If illegal evidence is admitted on the trial, it is not error for the court to refuse to find a fact proven by such evidence. (*Hutchings v. Castle,* 48 Cal. 152; *Campbell v. Buckman,* 49 Cal. 362; *Glascock v. Ashman,* 52 Cal. 420.) Where there is no issue tendered in the pleading upon a material matter, the court or jury will not be presumed to have found on such matter. (*Gifford v. Carvill,* 29 Cal. 589; *Bernal v. Gleim,* 33 Cal. 668; *Bosquett v. Crane,* 51 Cal. 505; *Dilla v. Bohall,* 53 Cal. 709; *Watson v. Cornell,* 52 Cal. 91.) The true test of the sufficiency of findings is this: Would they answer if presented by a jury in the form of a special verdict? (*Breeze v. Doyle,* 19 Cal. 101.) A surety on a note cannot require the security to be exhausted before an action can be maintained against him. (*Allen v. Woodard,* 125 Mass. 400, 28 Am. Rep. 250; *United States v. Hodge,* 6 How. 279; 2 Daniel on Negotiable Instruments, sec. 1328.) Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. (*Campbell v. Robbins,* 29 Ind. 271; *Crocker v. Getchell,* 23 Me. 392; *Prescott Bank v. Caverly,* 7 Gray, 217, 66 Am. Dec. 473; *Kern v. Von Puhl,* 7 Minn. 426 (Gill. 341), 82

Am. Dec. 105; *Bank v. Smith*, 27 Barb. 489; *Buckley v. Bentley*, 48 Barb. 283; *Mason v. Graff*, 35 Pa. St. 448.)

BERRY, J. (After Stating the Facts.)—The alleged grounds of error, mostly occurring on the trial in the findings of the court, in refusing a new trial, and in the judgment, will more fully hereafter appear.   The case was tried by the court without a jury.   The evidence received upon the trial was introduced and given without objection.   Being so given, the question of its admissibility, if objected to, does not arise.   The complaint shows the note to have been past due when transferred by Shaw, the payee, to the president of the plaintiff; that on the same day he transferred it to his bank; and that both transfers were by "assignment."   Whatever equities existed in favor of the appellant against the note, or the right to sue upon the note in the hands of the original payee, continued to exist against it in the hands of this plaintiff.   It is proper, then, in the outset, to inquire as to the rights of the appellant, as against the original payee of the note.   The obligations of Shaw will be considered as equally the obligations of the plaintiff.   On the trial, when the plaintiff had rested his case, the appellant, the defendant below, called John P. Vollmer, who testified that he had been president of the plaintiff corporation "ever since the bank was organized"; identified the note; and, on being shown another paper, said: "That is a mortgage executed by defendant Leland to A. J. Shaw, the payee named in this note.   I notice there is no seal of party executing it on this mortgage.   It is in the same condition, as to execution and acknowledgment, as when I received it from Mr. Shaw.   It may have been at the time I had transaction with Mr. Shaw that I noticed lack of seal.   I never mentioned or said anything to Williams about there being any defect in the mortgage."   Mortgage introduced in evidence by appellant.   Alonzo Leland testified: "This is the note executed by me to A. J. Shaw.   This is my signature.   The other signature is that of Williams.   I am principal debtor on the note. Williams signed it as surety only; and it was signed by him on condition that I should execute, to secure the payment of the note, a valid first mortgage upon real property.   That was a condition of his signing the note.   That condition was known also by Mr. Shaw, the payee of that note, and the agreement was

assented to by him at the time.   It was on those conditions, and under that agreement, that defendant Williams signed the note. That is my signature, and I executed that document, and supposed it to be a mortgage upon the land."   M. M. Williams, the appellant, testified: "I am defendant sued in this action.   I signed this note as surety only.   I signed it on condition and under the agreement that Leland should secure the payment of it by a first mortgage on property, and he would get the money from Mr. Shaw, and I would have only any balance to pay that the property did not bring.   Mr. Shaw, the payee, knew of the agreement and condition of my signing the note.   I don't know whether the mortgage was executed or not.   Mr. Shaw called right away, and told me he had the mortgage upon the land.   Mr. Vollmer, nor any officer of the bank, ever told me the mortgage was defective, or said anything about the mortgage."

There was no evidence in any way controverting either of these facts.   Each was within the issues made by the pleadings. The judge in his findings, though specially requested by the defendant, refused to find upon either of these facts, except the fact that the mortgage to secure the note was, at Williams' request, given by Leland.   To this refusal to find (1) as to the conditions on which the defendant Williams became a maker of the note, also as to the connection of Shaw with that agreement, and signing of the mortgage; (2) as to the condition of the mortgage as to seal, and what lands it was upon; (3) as to the knowledge of the plaintiff, in becoming the successor of Shaw in the ownership of the note—the appellant excepted.   This raises the question of the materiality of the issues involved in the points, or any of them, on which the judge refused to find. The description and amount of lands covered by the mortgage are shown in that exhibit, as well as its object to secure this note. The evidence, as we have seen, will warrant findings only as claimed by the appellant.   Contrary findings on either point, upon the evidence, could not be made.   Those points are: 1. Was Williams only a surety upon that note?   2. Did Shaw, in taking that note, know what relations Williams held to it?   3. And for what purpose the mortgage was executed?   And did he become a party thereto, by knowing the agreement between the

principal and surety on the note, assenting to the agreement, and accepting the mortgage as security for the note? Of course, if he did, he was bound in good faith not to defeat the measures which the appellant had taken for his protection, and which Leland had placed in Shaw's hands as special security for the note. The mortgage security became and was part of the contract between Shaw and the makers of this note. Besides the fact of its being the condition of appellant's signing, the payee of the note held it as a lien on property of the principal debtor, to which it was his duty to look before resorting to the surety on the note. If this were not an elementary principle of law, it became a controlling principle in this case, by virtue of the agreement between the makers, known and assented to by Shaw, and by his act in accepting the mortgage, pursuant to such agreement, together with the note. It is clear that those facts are material to this defendant. The counsel for respondent contends that, where there is no material issue tendered by the pleadings, findings on such matters will not be required. But the amendment to defendant's answer does tender these issues. The matter was material, and evidence was given upon it without objection, and was so submitted to the court as a part of the defendant's case. The authorities are numerous and conclusive that a failure to find upon a material issue, where the same is not in effect waived, but is requested, is error, and ground for reversal. (Hayne on New Trial and Appeal, secs. 239, 240, and cases cited; *Porter v. Muller,* 65 Cal. 512, 4 Pac. 531.)

The appellant further contends that the court below erred in striking out a part of the answer, in effect as follows: "That since the execution and delivery of the mortgage by which the note herein sued upon is secured, and since the recording of said mortgage, that two mortgages, still valid and existing, have been executed and delivered by the defendant Leland—one of said mortgages to John P. Vollmer, president of the First National Bank of Lewiston, plaintiff herein; and the other of said last-named mortgages to the plaintiff herein," aggregating $1,600 in amount, and "covering the lands herein described" (the lands in the Leland mortgage), "both of which were recorded prior to the commencement of this action"; and that said lands are not

worth more than sufficient to pay said last two mortgages, etc.; and claiming such act was to the damage of the defendant. It appears by the evidence that the plaintiff claimed the Leland mortgage to be defective, in not having been sealed; that such supposed defect was discovered by the president of the plaintiff when taking the note and mortgage from Shaw, and before taking the subsequent mortgages from Leland, upon the same property; but that the fact of such supposed defect was not communicated to Williams by any holder of these papers. It is only in view of the invalidity of this first mortgage that any injury to Williams could arise from those other mortgages. By the statute in force when the Leland mortgage was made, no seal was necessary. (Section 1, "Act Concerning Conveyances," approved January 12, 1875.) In effect, this statute was the same, as to the seal, as section 2920 of the Revised Statutes. Hence the mortgage was not invalid on that account, and it did in fact have precedence of the other two mortgages. This part of the answer was then immaterial to the issue, and was properly stricken out.

But the plaintiff was the holder of the note, and of a valid mortgage on real property to secure the same; yet instead of bringing an action to foreclose the mortgàge, and for any balance that might remain after applying the proceeds of sale upon the sum due on the note, as he might have done, he filed his complaint against both of the defendants on the note alone, but had summoned only the surety on the note, and proceeded for a money judgment against him alone. This he had no right to do, not only because it was his duty to exhaust the securities of the principal debtor in his hands, placed there specially as a prior security, to protect the defendant, but also because the statute denies another action, by any party, for the foreclosure of the mortgage.

Section 4520 of the Revised Statutes of Idaho provides: "There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. In such action the court may, by its judgment, direct a sale of the encumbered property, and the application of the proceeds of the sale to the payment of the costs of the court, and the expenses of the sale, and the

amount due to the plaintiff; . . . . and if it appear from the sheriff's return that the proceeds are insufficient, and a balance still remains due, judgment can then be docketed for such balance against the defendant or defendants personally liable for the debt," etc.

There are no other provisions in that chapter affecting this case. As we have seen, the mortgage was valid, and it is not pretended that the security is valueless. The appellant claims that, upon a note so secured, an action ignoring the mortgage cannot be sustained; and cites *Bartlett v. Cottle,* 63 Cal. 366. In that case the court holds "that, in such case as the one at bar, an action cannot be maintained on the note alone, unless the security is valueless." In that case also the value of the security appears to have been in issue, and it was not shown to be without value. This was decided under section 726 of the California Code of Civil Procedure, which substantially corresponds with the Idaho statute above quoted. *Vandewater v. McRae,* 27 Cal. 596, was an action by the holder of a note, secured by a mortgage on real estate, against indorsers of the note. Commenting upon the statute in question, the court in that case say: "The words [in the statute] 'secured by mortgage' are descriptive of the right or personal liability contemplated by the section, and any personal liability not so secured is manifestly without its purview. . . . . A mortgage which, by its terms, is made applicable to the promise of the maker only, can in no just sense be regarded as collateral either to the personal liability or to the 'right' of which the contract of indorsement is the source." The judgment in that case, for the reason that the defendants' contract was not that of makers of the note so secured, but was that of indorsers only, and so was not secured, was against the indorsers. But the doctrine of *Bartlett v. Cottle, supra,* is fully recognized.

There can be no question in the case at bar, that the mortgage was given to secure the note, for the safety of the appellant. So, in *Ould v. Stoddard,* 54 Cal. 613, it was held that where a mortgagee had prosecuted an action in Ohio to final judgment, upon a note secured by a mortgage on lands in California, he could not maintain, in the latter state, an action for foreclosure, for the reason that under this statute there can

be but one action for the recovery of any debt secured by mortgage. But the respondent's counsel contends that as the note was several as well as joint, under section 4106 of the Statutes, the plaintiff, at his option, might sue either or both of the defendants; and if he chose to sue only the surety on the note, as he was not the maker of the mortgage, foreclosure of the mortgage, in that suit, was impossible; also that it is optional with the plaintiff to abandon the mortgage security altogether; and cites *Ladd v. Ruggles,* 23 Cal. 233. On that question, if there be any doubt about it, we do not decide. But this joint and several note was the debt secured by this mortgage; and a judgment against either, upon the note, equally precluded a judgment of foreclosure of the mortgage, and in effect canceled it. Subrogation of the defendant, to the rights of the plaintiff in said mortgage, even had it been made, as there was a mere pretense of doing (but which was not done), would be of no use or value to him. He could no more foreclose it than could the plaintiff. The plaintiff had no right, by prosecuting this action, thus to deprive the defendant of the benefit of his original stipulation, for security to be given for the note, for his own protection, on his becoming a co-maker of it. He had a right to plead this statute, and the several decisions of the court on that question, and the judgment rendered, were each and all erroneous. There are other points of error assigned, but, from the conclusions reached in the foregoing, they need not be considered.

The judgment in the court below, and the order overruling motion for a new trial, must be reversed. Judgment reversed, and new trial ordered. All concur.