[Filed October 19, 1891.]

## R. H. THOMPSON *v.* J. P. MARSHALL.

DEED OF TRUST — LIEN — MORTGAGE.—A deed of trust designed as security for money advanced, or to be advanced, for the benefit of another, creates a lien on the real property described therein, and is in legal. effect a mortgage.

MORTGAGE — FORECLOSURE.— By section 414, Hill's Code, "a lien upon real or personal property, other than a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby, by suit": *held*, that the method of foreclosure prescribed by this section is exclusive and imperative, and an attempt to prescribe a different method in the mortgage or writing creating a lien upon real property, must be disregarded.

Multnomah county: L. B. STEARNS, Judge.

Defendant appeals.   Affirmed.

On the fifth day of April, 1890, the Portland Cable Railway Company executed and delivered to the appellant the following writing:

"Know all men by these presents:  That the Portland Cable Railway Company (a corporation duly organized and incorporated under the laws of the state of Oregon), in con-

sideration of twenty thousand dollars to it paid by J. P. Marshall, trustee, does hereby grant, bargain, sell and convey to said J. P. Marshall, trustee, and his assigns forever, the following described parcel of real estate, situate, lying and being in the county of Multnomah, state of Oregon, to wit: Lot numbered two, in block A; lots numbered one, three, five and seven, in block B; lots numbered two, six, seven and nine, in block D; lots one, two, three, four, five and six, in block E, and lots three, eight and twelve, in block F, all in Smith's addition to the city of Portland, county of Multnomah and state of Oregon, according to the recorded map and plat of said addition to said city in the county and state aforesaid, and containing twenty-two and forty-two one-hundredths acres, together with the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and also all of its estate, right, title and interest at law or equity therein or thereto, to have and to hold the same, to the said J. P. Marshall, trustee, and his assigns forever. And the Portland Cable Railway Company does covenant with the said J. P. Marshall, trustee, and his legal representatives, forever, that said real estate is free from all incumbrances, and that it will and its successors shall warrant and defend the same to the said J. P. Marshall, trustee, and his assigns forever, against the lawful claims and demands of all persons whomsoever. In witness whereof, the Portland Cable Railway Company has, by resolution of its board of directors, duly and legally adopted, caused these presents to be signed by its president and secretary, and its corporate seal to be affixed this fifth day of April, 1890.

"PORTLAND CABLE RAILWAY COMPANY,

[SEAL.]            "By PRESTON C. SMITH, President.

"PORTLAND CABLE RAILWAY COMPANY,

"By IRA B. STURGES, Secretary.

"Signed in presence of

"A. E. BORTHWICK,

"L. H. MAXWELL."

This deed was duly acknowledged.

The complaint alleges that the object and purpose of the execution and delivery of said deed to Marshall was to secure the payment of an indebtedness of said railway company to the Ainsworth National Bank of Portland, Oregon, under a secret trust that said Marshall should sell and convey said lands at either public or private sale, and out of the proceeds thereof should pay said bank the amount of said indebtedness, rendering the overplus if any to said railway company or its assigns. The complaint further alleges that thereafter and on the twenty-seventh day of January, 1891, said railway company was indebted to divers persons, including the respondent, and in various sums of money; that on said day said railway company executed and delivered to said Marshall another conveyance of said real property described in said conveyance, dated April 5, 1890, and also by said deed, dated January 27, 1891, conveyed other real property to said Marshall. The following is a copy of said conveyance, dated January 27, 1891 (omitting the acknowledgment, which is in due form), to wit:

"Know all men by these presents: That the Portland Cable Railway Company, a corporation duly organized and existing under and by virtue of the laws of the state of Oregon, having its principal office and place of business in the city of Portland, in said state, for and in consideration of the sum of one dollar, to it in hand paid by J. P. Marshall of the city of Portland, state of Oregon, and in consideration of other valuable considerations, to it moving, has bargained, granted and sold and by these presents does grant, bargain, sell and convey unto said J. P. Marshall, as trustee, all the following described real estate, situate in the county of Multnomah and state of Oregon, to wit: Lot two in block A; lots one, three, five and seven in block B; lots two, six, seven and nine in block D; all of block E, and lots three, eight and twelve in block F, all in Smith's addition to the city of Portland, in said county and state, according to the recorded map and plat thereof. [The other lands conveyed

by this deed are not in controversy in this suit, and therefore are omitted from the description.] To have and to hold the same, together with the appurtenances thereunto belonging or in anywise appertaining, unto the said J. P. Marshall and his successors in this trust, in trust, nevertheless, and for the security and benefit of all persons holding or owning claims against the said railway company, or holding or owning mortgages upon any of the property of said company not covered by the trust deed securing the bonds of the company; and when the said indebtedness shall have been fully discharged, and all said claims against said company except said bonds shall have been fully met and paid, then to reconvey the property herein conveyed to said Portland Cable Railway Company, its successors or assigns. It is further agreed and provided that for the purpose of raising funds to liquidate and pay off said indebtedness intended to be secured hereby, the said J. P. Marshall as trustee, or his successors in this trust, shall have power and authority under and with direction and consent of the board of directors of said Portland Cable Railway Company to borrow money in the name of said company and to secure the repayment of the same with interest by mortgage upon any or all the property hereby conveyed, or for said purpose with like direction and assent of said board of directors to sell said real property or any part thereof, and to make, execute and deliver good and sufficient deeds therefor with or without covenants of warranty and against encumbrances; and the money arising from such loans negotiated and from such sale or sales of said real estate shall be by the said J. P. Marshall or his successor in this trust applied to the payment of the indebtedness herein provided for.

"In witness whereof, the said Portland Cable Railway Company has caused these presents to be signed by its president and secretary and its corporate seal to be hereunto affixed, in pursuance of a resolution of its board of directors

duly passed on this twenty-seventh day of January, A. D. 1891.

"PORTLAND CABLE RAILWAY COMPANY,

[SEAL.]        "By C. H. WOODWARD, President.

"PORTLAND CABLE RAILWAY COMPANY,

"By IRA B. STURGES, Secretary.

"In presence of

"CHARLES R. FAY,

"B. F. CLAYTON."

This deed was also duly acknowledged.

It is alleged in the complaint that on the eighteenth day of April, 1891, the board of directors of said railway company duly passed a resolution directing and assenting that said Marshall as trustee should sell certain specified properties described in each of said deeds, and that said resolution directed and assented that said sale should be made at public auction at a place in the city of Portland, to be designated by said trustee; that certain prescribed notice should be given for a specified time, and the property be sold on terms named in said resolution. The complaint further shows that plaintiff is one of the creditors of said cable railway company, whose debt was secured by the deed dated January 27, 1891, and that the defendant was about to sell all of said property under said secret trust relating to said deed of April 5, 1890, at the same time he would sell under the deed of January 27, 1891, under the direction and assent of the board of directors of said cable railway company, and make certain disposition of the proceeds of said sale as directed by the said board of directors, and will not foreclose the same by proper proceedings in court.

The defendant demurred to the complaint, which was overruled, and declining to further plead, a final decree was entered enjoining said sale, from which decree this appeal was taken.

*Fred. V. Holman,* for Appellant.

*J. V. Beach,* for Respondent.

STRAHAN, C. J.—The deed dated January 27, 1891, shows upon its face that so far as money was advanced upon the faith of it, or so far as it became security for any debt of the cable railway company, the same is a mortgage, and all of the incidents of redemption and the right of foreclosure attached to it. (3 Pom. Eq. Jur. § 1195.) And the deed of April 5, 1890, under the allegations in the complaint which stand admitted by the demurrer, is of the same character. Though its phraseology is somewhat different, its real character must be determined by its object. If its object were to secure a debt whether theretofore or to be thereafter contracted either by the cable company on the faith of it or by Marshall as trustee for its use and benefit as between the parties to such transaction, and all persons dealing in relation to the property with notice of the facts, such conveyance is a mortgage. But it is said by the appellant that these deeds are deeds of trust with power of sale superadded, and that in such case the power may be exercised without the intervention of a court of equity. Much of the learning on this subject is collected by Judge DILLON in a very exhaustive article (2 Am. Law Reg. N. S. 641); but the learned author treats the subject on the theory that upon the execution of the mortgage or deed of trust the legal title becomes vested in the mortgagee. Reasoning from this premise, his conclusions are no doubt correct, and are sustained by an overwhelming array of authorities. But it was long ago settled in this state that a mortgage does not convey title, but only creates a lien. (*Anderson* v. *Baxter*, 4 Or. 105; *Sellwood* v *Gray*, 11 Or. 534.) In all the states that follow this line of decisions, so far as I have been able to discover, a deed of trust designed as security for money has no other or greater effect than a mortgage. *Webb* v. *Hoselton*, 4 Neb. 308; 19 Am. Rep. 638, is a case in point. There, the conveyance was absolute with power of sale in case of default; but the court held the equity of redemption existed and could not be cut off by an attempted exercise of the power conferred by the deed. And it was observed by the

court: "The fact that the mortgage in this instance is in the form of a deed of trust does not change its character from a mere security for the payment of money, nor does it convey the legal title, nor do the restrictions therein contained prevent the plaintiff from availing herself of the safeguards thrown around the debtor to prevent a sacrifice of her property." So it was said in *Lenox* v. *Reed*, 12 Kan. 223: "The mere execution of said trust deed of course conveyed no title to E. & B. (although Foreman at the time he executed the same held the entire title to the land), for a deed of trust, given to secure the payment of money was at that time merely a mortgage. (Laws, 1859, 571, § 2; Comp. Laws, 722, § 2.) And a mortgage in this state conveys no estate or title to the land but only creates a lien thereon." And *Flint etc. Ry. Co.* v. *Auditor-General*, 41 Mich. 635; *Newman* v. *Samuels*, 17 Iowa, 528, are cases where the question seems to have been much considered. In passing upon the character and effect of the instrument in the latter case, the court said: "In ordinary acceptation this is called a deed of trust, but in legal effect it is a mortgage with the power of sale to be sure superadded thereto, which does not change its essential attributes." (Willard's Eq. 430; Story's Eq. § 1018; 4 Kent. *146; Powell on !Mortgages, 9 and 104.) In the case of *Woodruff* v. *Robb*, 19 Ohio, 212, the supreme court, speaking of a conveyance of land to a trustee as collateral security for the payment of a debt with power to sell on default of payment, says: "The deed in question contains all the substantial qualities of a mortgage and nothing more. It was a security for a debt to be void if the debt were paid. The fact that the conveyance was made to a person other than to the creditor, and that it contained a power to sell, does not change its character as a mortgage." The same general principle was declared in the case of *Sargent* v. *Howe*, 21 Ill. 148; *Eaton* v. *Whiting*, 3 Pick. 484, and many other authorities cited in 2 Am. Law Reg. 643, 649; and the same doctrine prevails in Texas. (*Wright* v. *Henderson*, 12 Tex. 43; *Blackwell* v.

*Barnett,* 52 Tex. 326; *McLane* v. *Paschal,* 47 Tex. 365; *Walker* v. *Johnson,* 37 Tex. 127.)

I am aware that the cases cited on the subject of foreclosure and sale were largely influenced and probably controlled by statutory provision, but substantially the same statutory provision prevails here. Section 414, Hill's Code, provides: "A lien upon real or personal property other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby, by suit." This language is too plain and direct to be misunderstood. Its import cannot admit of discussion. The lien shall be foreclosed by suit. This cuts off every other method of foreclosure. Upon the argument the learned counsel for the appellant referred to this section of the code and claimed this language was used simply for the purpose of vesting the court with jurisdiction over the subject of foreclosure. But this construction seems unsatisfactory for the reason that the use of such language was wholly unnecessary for that purpose. The creation of a court of equity, and vesting in it general equity jurisdiction would be all that was necessary. It could then take cognizance of every subject of equity jurisdiction that might be brought before it. To give full effect to the language of the code under consideration, it must be given a wider import, and that is, to render imperative a foreclosure by suit of the liens specified and provided for in the section.

What effect later legislation had upon the foreclosure of chattel mortgages, it is not now necessary to consider further than to say that that act may be regarded as a legislative interpretation of this section. After the enactment of the code by a subsequent act, the legislature directed in effect, if the mode of foreclosing a chattel mortgage were provided in the mortgage, it should be foreclosed as therein provided and not otherwise. This last enactment was wholly unnecessary if the appellant's contention were sound, for the reason that the parties could have provided for a sale of the

property in the chattel mortgage, and proceeded to foreclose by sale without the intervention of a court. The general doctrine undoubtedly is, that where the statute prescribes the method of foreclosure, a power of sale or other agreement in the mortgage that it shall be foreclosed in any other manner than that prescribed by the statute, will be void, and the statute in such cases must be strictly followed. (Wiltsie on Mort. Forcl. § 3.) The result would be the same in this case whether we hold a deed of trust made as security is a mortgage or not, for the reason that the statute enumerates and includes every lien (except judgments) whether created by mortgage or otherwise. The construction we have placed upon section 414, *supra,* is further strengthened by section 422 of the same chapter of the code, which provides: "The provision of this title as to the liens upon personal property are not to be construed so as to exclude a person having such lien from any other remedy or right in regard to such property."

Let the decree appealed from be affirmed.