BARTH, APPELLANT, *v.* ELY, RESPONDENT.

(No. 6,448.)

(Submitted May 24, 1929. Decided June 21, 1929.)

[278 Pac. 1002.]

 
 

 

*Mr. M. J. Lamb,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Brown, Wiggenhorn & Davis,* for Respondent, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment dismissing plaintiff's action for rent alleged to be due her from defendant on a hotel building in Billings.

The complaint filed herein alleged that in February, 1920, A. H. Barth, husband of the plaintiff, was the owner of the Carlin Hotel, which he then leased to Stephen Ely and R. D. Jones for a term of four years, at a monthly rental of $405, and immediately thereafter conveyed to the plaintiff, Annie Barth; that the joint lessees operated the hotel until November 1925, when Jones assigned all his interest to Ely, who continued to hold over and operate the hotel until the latter part of December, 1926, but failed and neglected to pay the rent the first of each month from May to December. Plaintiff's claim is set forth in two causes of action; the first for the stipulated rent for each of the eight months mentioned, with interest from the date each amount is alleged to have fallen due; the second for the same amounts as the reasonable rental value of the premises for each of those months, with like interest.

Defendant pleaded the defense that he did not hold over, after the expiration of the lease mentioned, but was, at all times from January 1, 1924, to December 24, 1926, holding

under the written lease, duly extended pursuant to the express terms thereof; that the lease expressly provided that the rent should be paid in advance and gave to the landlord a lien upon all of defendant's personal property in the hotel as security for such payment, to be enforced by seizure and sale "in the same manner as in the case of chattel mortgages on default thereunder," which provision was in fact a chattel mortgage amply securing plaintiff for the payment of the rent as it fell due, but that plaintiff never sought to exercise the power of sale as expressly provided for in the "mortgage clause" of the lease, and is therefore barred from maintaining this action.

By reply plaintiff denied that she had any lien upon defendant's property or that such property had a value in excess of $1,600, and alleged that on May 20, 1926, defendant mortgaged the personal property in the hotel to a bank to secure a note for $1,500, and on October 9, 1926, placed a second mortgage thereon to secure the payment of a note for $1,000, which mortgages were duly filed in the office of the clerk and recorder by the mortgagee, who had no notice or knowledge of the lien clause in the "mortgage," and therefore if a lien ever existed it was wrongfully and wilfully destroyed, and plaintiff's security rendered valueless by the defendant, who is thereby estopped from asserting that her sole remedy is by foreclosure.

At the time the action was commenced, plaintiff attached the personal property in question and, in order to do so, paid the mortgagee the full amount due on its mortgage notes, amounting to $2,689.56, and, a week after defendant's answer, was filed, caused the mortgaged property to be sold at sheriff's sale on foreclosure of the mortgages; it brought but $1,628.05. In the meantime defendant had moved the court to discharge the attachment, which motion was overruled on March 16, 1927. These matters plaintiff set up in a supplemental reply and therein alleged that the matters set up in defendant's answer "were adjudged and determined" by the order overruling the motion to discharge the attachment; that the

order is still in full force and effect and no appeal has been taken therefrom.

A jury trial was had, but at the close of all the testimony it was stipulated by counsel and ordered by the court that, as questions of law alone were presented except as to two matters, no general verdict should be submitted to the jury. Special interrogatories were submitted on the two questions requiring findings on the evidence, and, in answer to these, the jury found: (1) That all of defendant's personal property in the hotel at the time of the commencement of the action had a value of $2,600, and (2) that the reasonable rental of the hotel building from May to December, 1926, was $375 per month. The jury was discharged and the matter taken under advisement. Thereafter the court found, as a matter of law, that "on the undisputed evidence as well as the jury's findings, the plaintiff is not entitled to recover * * * and the action should be dismissed on the merits," thus, in effect, finding that each of the allegations of the defense was true. Judgment of dismissal followed. Plaintiff has appealed from the judgment and, by appropriate specifications of error, raises the questions hereinafter discussed.

1. The first question raised is as to the sufficiency of the evidence to warrant a finding that the written lease was extended from and after January 1, 1924.

The lease, made a part of the answer, provides that the "lessees may, at their option, by serving upon the lessor a notice in writing at least ninety (90) days before the expiration of the term thereof, extend the term of this lease for a further period of five (5) years from January 1, 1924." On March 20, 1923, more than ninety days prior to the expiration of the term of the lease, Jones, as manager of the hotel, wrote the landlord that "on behalf of the Carlin Hotel Co. I beg to notify you of our intention of taking advantage of the provision in lease on Carlin Hotel. * * * Provision gives us an additional option on our lease for 5 years from Jan. 1, 1924, to Jan. 1, 1929, at same terms."

On November 28, 1925, Jones assigned his interest in the lease to defendant by indorsement thereon which recites: "The parties hereto having exercised their option as shown in said lease to extend the term thereof for the five-year period as provided for in said lease. * * * " The assignment was submitted to the plaintiff, as lessor, for her approval or rejection, and she indorsed thereon: "The undersigned, the lessor herein named, does hereby consent to the foregoing assignment. [Signed] Annie Barth."

Plaintiff contends that the letter of March 20, 1923, was but notice of the lessees' "intention" to avail themselves of the option given, and, in view of the fact that defendant alleged that the lease was extended in November, 1925, the letter was immaterial and irrelevant, and a notice given in 1925 would be ineffective. Error is not specified in admitting the letter in evidence and it is before us for consideration; while it expresses an intention to take advantage of the option, rather than an election then and there to exercise the option, it is reasonably clear that the parties treated the lease as extended; almost two years after the expiration of the term of the original lease the plaintiff recognized the lease as in existence by consenting to an assignment of an interest therein.

Independent of the notice and recognition of the extension, the rule is that where a lease contains such an option, the mere holding over after the expiration of the specified time will constitute an election to hold for the additional or extended term (35 C. J. 1036, and cases cited); such holding over is not from year to year, but "the continued possession is referred to the renewal" (*Insurance Building Co.* v. *National Bank,* 71 Mo. 58); the original lease becomes a demise for the extended term and needs no renewal (*Crowder* v. *Bank of Commerce,* 127 Va. 299, 103 S. E. 578).

2. Plaintiff contends that, even though the defendant was holding the premises under the written lease, the clause in question created a lien and not a mortgage, and that under section 8233, Revised Codes of 1921, she had the right to waive the lien and sue for the amount due as rent, asserting

that section 9467 applies only to mortgages, as such, which have been executed with all the formalities required by statute. The fallacy of this position is demonstrated when we consider the statutes upon which plaintiff relies, the history of our law of mortgages, and the former decisions of this court thereunder, which, having been followed and acted upon for many years, cannot now, under the doctrine of *stare decisis,* be disturbed.

While a stipulation in an instrument for a lien on personal property is inconsistent with the idea of a chattel mortgage in those states wherein a mortgage is held to pass title to the property (11 C. J. 404, and cases cited), for the reason that the transfer of title creates no lien (*State ex rel. Malin-Yates Co.* v. *Justice of the Peace,* 51 Mont. 133, 149 Pac. 709), the converse of the rule existing in those states pertains in this state. Here a mortgage passes no title but creates a lien upon property as security for the payment of a debt or the performance of an act (secs. 8246 and 8251, Rev. Codes 1921; *Gallatin County* v. *Beattie,* 3 Mont. 173; *Wilson* v. *Pickering,* 28 Mont. 435, 72 Pac. 821; *Davidson* v. *Wampler,* 29 Mont. 61, 74 Pac. 82; *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; *Morrison* v. *Farmers' & Traders' State Bank,* 70 Mont. 146, 225 Pac. 123), and whenever our legislature has referred to a "lien" upon either real estate or personal property, that reference must be construed to include a mortgage, unless the contrary intention is expressed.

Section 8233, above, declares that "the existence of a lien, as security for the performance of an obligation, does not affect the right of the creditor to enforce the obligation without regard to the lien," and, to make it certain that this provision includes a mortgage lien, the legislature enacted section 8224, as a part of the chapter in which section 8233 appears (Chap. 83, Part 5, Civil Code of 1921, "Liens in General—Definition, Creation and Effect"), which section (8224) provides that "contracts of mortgage or pledge are subject to all the provisions of this chapter." Nothing to the contrary appearing in the Codes, it would be plain that a creditor was authorized to

enforce the mortgage obligation "without regard to the lien" of the mortgage. However, section 9467, above, declares that "there is but one action for the recovery of a debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter" (i. e., Chap. 38, Part 3, Code Civ. Proc. 1921, "Actions for Foreclosure of Mortgages"). The reason for this provision is found in the history of the development of the law of mortgages.

While the common law of England is the basis of our jurisprudence, the civil law doctrines of *pignus,* applying to chattels, and *hypotheca,* applying to landed property, as grafted on the *mortuum vadium* of the common law, is doubtless the root from which our mortgage law has grown. Under the civil law doctrines mentioned, no title to the property passed; failure of payment at the appointed time did not work a forfeiture, and principles of equity were applied so that the misfortune of the debtor should not become the fortune of the creditor. A well regulated procedure or practice of foreclosure, founded upon notice to the parties interested, open decree of court and publicity of sale or entry grew up with the law of pledges, so that the loss to both debtor and creditor would be the least possible. (Story's Equity Jurisprudence, secs. 1005, 1009 to 1024.)

The severity and unjustness of the common-law doctrines were so odious to the chancellors of England that they sought continuously to ingraft the enlightened equitable principles of the civil law of mortgages upon the severe common-law rules, until the justness and equity of their decrees were finally recognized by the courts of common law and acquiesced in by these courts. In the equity practice there developed four methods of foreclosure: (1) By entry and possession; (2) by strict foreclosure or foreclosure without sale; (3) statutory foreclosure; (4) foreclosure by equitable action. (1 Wiltsie on Mortgage Foreclosure, pp. 29–32.)

Prior to the union of legal and equitable actions, under the reformed procedure, a mortgagee had three separate remedies,

two legal and one equitable. He could maintain: (1) An action at law on the note, with judgment and execution, as though no mortgage existed; (2) an action in ejectment to recover possession of the mortgaged premises, the legal title being in the mortgagee; and (3) a suit in equity to foreclose the equity of redemption. The full relief of judgment and foreclosure could not be obtained without two actions, in separate and distinct tribunals; the one to enforce a right purely legal, the other to enforce a right purely equitable. (Phillips on Code Pleading, 195.) In most states these three remedies still exist, and, unless modified by statute, the mortgagee may pursue all of them either concurrently or successively. (1 Wiltsie on Mortgage Foreclosure, 33.) Such a situation is abhorrent to code pleading and practice, designated by the commission reporting to the New York legislature in 1850, the ''Field Code'' (never adopted) ''to prevent a multiplicity of actions.'' Section 905 thereof provided: ''When a debt is secured by mortgage of real or personal property, or a lien or encumbrance thereon, separate actions respecting the debt and the security cannot be allowed, but the creditor must include in one action all his claims upon both.'' This provision was not an attempt to abrogate the rule theretofore existing in New York that a creditor could waive his security and sue in debt (*Elder* v. *Rouse*, 15 Wend. (N. Y.) 218; *Roosevelt* v. *Carpenter*, 28 Barb. (N. Y.) 426); it would but prevent him from thereafter seeking to enforce his mortgage, and that such a waiver was contemplated under the so-called Field Code is manifest by the fact that section 1595 of the ''Civil Code (1865)'' thereof is identical with our section 8233, above. The latter section provides no new remedy, but merely declares the rule of the common law as it came to us from England.

In 1860 (Stats. 1860, p. 303) California passed its ''Practice Act,'' in which section 246 of 1850 was amended by section 23, which declares: ''There shall be no action for the recovery of any debt or the enforcement of any right secured by a mortgage or lien upon real estate or personal property, which shall be for an enforcement of said lien or mortgage in accord-

ance with the provisions of this chapter." As carried in the "Supplement" to the digest of 1850–1860, there are inserted in the section, after the word "no" the words "(but one?),", indicating the belief of the compiler that a clerical error was made at some stage of the enactment of the section.

In 1872 California amended her Act to read exactly as does our section 9467, above (now section 726, Cal. Code Civ. Proc.). This statute was thereafter construed by the supreme court of California to absolutely prohibit an action on the note secured by mortgage so long as the security exists, stating that "the tendency of modern legislation is to prevent a multiplicity of suits" (*Ould* v. *Stoddard,* 54 Cal. 613), and that "the obvious purpose of the statute is to compel one who has taken a special lien to secure his debt to exhaust his security before having recourse to the general assets of the debtor." (*Merced Bank* v. *Casaccia,* 103 Cal. 641, 37 Pac. 648). And in *Kinsel* v. *Ballou,* 151 Cal. 754, 91 Pac. 620, it is said: "It is no doubt true that, so far as the mortgagors themselves were concerned, an action to recover the amount of the note could not have been maintained apart from a foreclosure of the mortgage. As to them the mortgaged property constituted a primary fund for the discharge of the debt, and no personal judgment could have been entered against them, unless after foreclosure a deficiency had appeared"—citing section 726, above. (See, also, *Bartlett* v. *Cottle,* 63 Cal. 366; *Bull* v. *Coe,* 77 Cal. 54, 11 Am. St. Rep. 235, 18 Pac. 808; *Lavenson* v. *Standard Soap Co.,* 80 Cal. 245, 13 Am. St. Rep. 147, 22 Pac. 184.) These decisions go back as far as 1879.

We adopted our Chapter 83, above, on liens, from California, but our legislature added to the provisions of the California chapter (secs. 2888–2892, Cal. Civ. Code) our section 8233, above, evidently taking it from the Field Code. California has no such provision; but in construing their section 726, above, held that it had no application to liens other than mortgages, and, as to such other liens, the general principle, stated above, that a lienor may waive his security and sue for the debt, applies. (*Jones* v. *Evans,* 6 Cal. App. 88, 91 Pac. 532.)

This court has said that we adopted our section (now section 9467) from California, and therefore adopted the interpretation given the statute in California (*Largey* v. *Chapman*, 18 Mont. 563, 46 Pac. 808; *Brophy* v. *Downey*, 26 Mont. 252, 67 Pac. 312), but, while the effect of the section, now appearing as section 8233, above, upon that now 9467, was raised in the *Brophy Case*, it was deemed unnecessary of determination under the facts presented.

Whenever this court has been called upon to pass on the question, it has held, without regard to the provisions of section 8233, above, that section 9467 prohibits any other action than that provided by statute for the foreclosure of the mortgage and that the creditor cannot waive a mortgage and sue on the mortgage debt. (*First Nat. Bank* v. *Bell Mining Co.*, 8 Mont. 32, 19 Pac. 403; *Largey* v. *Chapman*, above; *Brophy* v. *Downey*, above; *State Sav. Bank* v. *Albertson*, 39 Mont. 414, 102 Pac. 692; *Continental Oil Co.* v. *Jameson*, 53 Mont. 466, 164 Pac. 727; *Kinyon Inv. Co.* v. *Belmont State Bank*, 69 Mont. 282, 221 Pac. 286.)

Idaho has a statute identical with our section 9467 (sec. 4520, Rev. Codes 1908, Idaho), and thereunder it is declared that, so long as the security has value, the only action which will lie is that provided by statute for the foreclosure of the mortgage; "a mortgagee cannot waive his security and sue upon the debt." (*First Nat. Bank* v. *Williams*, 2 Idaho (Hasb.), 670, 23 Pac. 552; *Rein* v. *Callaway*, 7 Idaho, 634, 65 Pac. 63; *Clark* v. *Paddock*, 24 Idaho, 142, 46 L. R. A. (n. s.) 475, 132 Pac. 795.) This is the rule laid down in Utah under an identical statute (*Hammond* v. *Wall*, 51 Utah, 464, 171 Pac. 148), and in Oregon under a similar provision (*Thompson* v. *Marshall*, 21 Or. 171, 27 Pac. 957).

Section 9467 was first enacted in 1864 (section 223, Bannack Statutes, p. 90), and the interpretation thereof, in harmony with that of California and other states having the identical provision, would be unhesitatingly approved, were it not for the existence of section 8233, and were it not for our decisions above, or had section 8233 been enacted after those deci-

sions were rendered and the question was now presented as one of first impression, we would as unhesitatingly hold that the latter section impliedly repealed the former and permits a mortgagee to waive his mortgage security and sue upon the mortgage debt "without regard to the lien." However, those decisions were rendered while both sections were in full force and effect and impliedly hold that section 8233 does not apply to mortgage liens, and both sections have been on the books and construed by the court for more than thirty years without any apparent thought on the part of the legislative department that they were in conflict; they have been simultaneously carried forward into three codifications of our statutes (Rev. Codes 1895, 1907 and 1921), and, while section 9467 was in effect long before section 8233 was enacted and the two appeared in separate Codes, viz., the former in the Code of Civil Procedure, and the latter in the Civil Code, the rule is that the Codes must be construed as though each had been passed on the last day of the session during which they were passed and the provisions of the Codes must be construed, except as to conflicts, as though all of the Codes had been passed at the same moment of time (secs. 5521, 5522, Rev. Codes 1921); but if the provisions of any chapter conflict with or contravene the provisions of another chapter of the same title, the provisions of each chapter must prevail as to all matters and questions arising out of the subject matter of such chapter (sec. 5524), and where the provisions of any title conflict with the provisions of another title, the provisions of each title must prevail in like manner (sec. 5523).

Sections 9467 and 8233 must therefore be deemed to have been passed at the same time, and it must be presumed that the legislature intended that both should be operative and each should govern as to the title in which it is found, and it becomes our duty to construe them together and reconcile them, if possible. (*Congdon* v. *Butte Consolidated Ry. Co.,* 17 Mont. 481, 43 Pac. 629; *State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362; *Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836.) This may be done by applying the rule

that where one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite way, the latter will prevail over the former to the extent of any necessary repugnancy between them. (Sec. 10520, Rev. Codes 1921; *Stadler* v. *City of St. Helena*, 46 Mont. 128, 127 Pac. 454; *Reagan* v. *Boyd*, 59 Mont. 453, 197 Pac. 832; *State ex rel. Daly* v. *Dryburgh*, 62 Mont. 36, 203 Pac. 508; *Kester* v. *Amon*, 81 Mont. 1, 261 Pac. 288; *London G. & A. Co.* v. *Industrial Acc. Board*, 82 Mont. 304, 266 Pac. 1108.)

The construction heretofore placed upon section 9467, without regard to section 8233, is salutary and under the doctrine of *stare decisis* should not now be disturbed; the section prohibits the maintenance of an action on a debt secured by mortgage, except such action be for the foreclosure of the mortgage, and the contrary rule laid down in section 8233 applies to the general subject of the chapter in which that section is found, "Liens," other than mortgage liens.

3. This construction of the two Acts requires a determination as to what is meant by the term "mortgage." In *State Savings Bank* v. *Albertson*, above, the court held that, to come within the provisions of section 9467, "the security must be in the form of a mortgage, or, adopting the most liberal view, to be what the law would deem the equivalent of a mortgage."

In *Crone* v. *Occident Elevator Co.*, 70 Mont. 211, 224 Pac. 659, this court was called upon to construe a provision in a crop lease by which the lessor reserved title and possession to the tenant's half of the crop with the right to "take and hold enough of the crop * * * and products that would on the division of the same belong to said party of the first part [tenant] to repay any and all the advances made * * * and also to pay all indebtedness due said party of the second part by said party of the first part, if any there be." Of this provision the court said: "The indebtedness from Mortinson [the tenant] to plaintiff had no connection with the operation of the farm. As to this amount the reservation of title

and possession of the part of the grain which belonged to Mortinson upon division was an attempt by the contract to create in plaintiff the right to satisfy her claim out of this grain or its proceeds. This constituted a mortgage.'' After digesting decisions from other states with relation to reservations to secure repayment of advances made to the tenant, among them *Minneapolis Iron Store Co. v. Branum,* 36 N. D. 355, L. R. A. 1917E, 298, 162 N. W. 543, wherein it is said that such a reservation ''simply means that the landlord has a chattel mortgage on the tenant's interest for any advances made by the landlord to the tenant,'' this court said: ''Although there are decisions to the contrary, it seems to us that the better reasoning, as well as the weight of authority is to the effect that a provision of this kind in such a contract is in effect only a mortgage and should be controlled by the statutes governing chattel mortgages.''

Tiffany, in his work on Landlord and Tenant (vol. 2, sec. 322), says: ''Stipulations (in leases) having for their object the creation, in favor of the lessor, of a lien or charge upon property on the demised premises to secure the payment of the rent * * * take various forms. The most common is a statement merely to the effect that a 'lien' is created. * * * In jurisdictions where the common law view of a mortgage, as involving the conveyance of the legal title, subject to a defeasance, no longer prevails, such a lien provision is, it seems, neither more nor less than a mortgage.''

In the provision before us the stipulation goes further than those discussed by the author, as it provides that ''such lien may be enforced, on the nonpayment of any of the rent aforesaid, by the taking and sale of such property in the same manner as in the case of chattel mortgages on default thereunder.'' It is true that this provision treats the lien as something other than a chattel mortgage and provides for satisfaction ''in the same manner as'' in the case of a chattel mortgage, and plaintiff asserts that it should not be held to be a mortgage because the parties did not consider it such at the time the lease was executed and did not thereafter consider it or deal with it as a mortgage. However, ''a chattel mortgage cannot

be distinguished from other transactions by the form given to the instrument, nor by the name which the parties have given it; nor conversely will an instrument, in fact a chattel mortgage, be regarded as something different because called by the parties by a different name," and "if an instrument is a mortgage when executed, its character does not afterwards change, for once a mortgage always a mortgage is a maxim of the law." (11 C. J. 401.)

While our statutes require certain formalities in the execution and filing of mortgages, as affecting the rights of others, as between the parties, no formalities are required; it may take the form of a mere verbally granted lien upon property for the security of the payment of a sum due, and such a mortgage will be as binding and effectual between the debtor and the creditor as though the contract was reduced to writing. (*Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452, citing Cobbey on Chattel Mortgages, sec. 14. See, also, *Whitney* v. *Eichelberger*, 16 Iowa, 422; *Bates* v. *Wiggin*, 37 Kan. 44, 1 Am. St. Rep. 234, 14 Pac. 442; *Glover* v. *McGilvray*, 63 Ala. 508; *McTaggert* v. *Rose*, 14 Ind. 230; *Bank* v. *Jones*, 4 N. Y. 497, 55 Am. Dec. 290.)

Having by written contract granted a lien upon personal property as security "for the performance of an act," to wit, the payment of rent in advance, the contract comes squarely within the statutory definition of a mortgage given in section 8246, Revised Codes of 1921, and is, therefore, as between the parties, a mortgage, and we cannot read into section 9467 the requirement that the "mortgage" therein mentioned be a formal mortgage; the section bars the present action unless counsel for plaintiff is correct on his next contention.

4. Plaintiff contends that the defendant is estopped from asserting the bar of the statute by reason of his conduct in disregarding plaintiff's lien and mortgaging the property to the bank.

Section 9467, above, makes no reference to the sufficiency of the security or its existence at the time of the commencement of the action. In *Charles Mix County Bank* v. *Calta*, 45 S. D. 564, 189 N. W. 527, it is held that a statute of like effect pro-

hibits a personal action though the security has become valueless; but such a rule does not exist in this state. Section 9257, Revised Codes of 1921, prohibits the attachment of property in an action for debt if the debt is secured by mortgage or lien upon real or personal property, or unless, if so originally secured, the security has without any act of the plaintiff, or person to whom the security was given, "become valueless." By a parity of reasoning, this court has laid down the rule that section 9467, does not prohibit a personal action when mortgage security becomes valueless through the fault of the mortgagor (*Brophy* v. *Downey*, above; *State Savings Bank* v. *Albertson*, above), thus harmonizing the rules on analogous subjects; but the rule is no broader with reference to the subject under consideration than is that applying to affidavits for attachment. So long as the security has value, the only action that will lie on the mortgage debt is the statutory action on foreclosure. (*First Nat. Bank* v. *Williams*, above; *Continental Oil Co.* v. *Jameson*, above.)

The word "secured," used in sections 9257 and 9467, "does not mean that the security shall be adequate, or that in case prior liens upon it would exhaust the money derived from the land conveyed as security on a sale of it, then the plaintiff is relieved from bringing the action to foreclose. The proper construction of the language of the statute is, that if the mortgage on its face purports to be a security to the plaintiff, then he must bring his action for foreclosure." (Quoted from *Barbieri* v. *Ramelli*, 84 Cal. 154, 23 Pac. 1086, in *Largey* v. *Chapman*, above, and again approved in *Brophy* v. *Downey*, above.)

"The value of the security, or its sufficiency to cover the amount of the claim it is intended to secure, however, are matters not to be inquired into on a motion to dissolve the attachment" (3 Cal. Jur. 543), and, consequently, are not matters justifying a creditor in suing on the debt secured without foreclosing his mortgage.

Herein no attempt was made to exhaust the security or to show that it had become valueless through the action of the defendant; instead, the plaintiff attached the very property on

which the lien was given, and, in order to do so, took over the two mortgages given by defendant upon the property, which were not foreclosed until after the defendant had answered setting up his defense under the statute; by her actions plaintiff showed that she considered the property had value over and above the amount secured by the mortgages and the evidence tends to show that the property did have some substantial value in excess of the mortgage debts mentioned.

The defendant did not attempt to defend by showing a situation created by his wrongful act, but by showing the bar of the statute existing in spite of such act.

"The statute [sec. 9467] is imperative" (*Largey* v. *Chapman*, above), and the doctrine of estoppel does not apply. Nor is it shown that plaintiff was injured by the alleged wrongful or fraudulent acts of defendant; the mortgage given the bank in May, 1924, was recorded; there was then one month's rent past due, and, under the lien clause in the lease, plaintiff could have taken possession of the property and sold it before that mortgage was given, or she could have exercised her right of sale after the notice of the mortgage was brought home to her and recovered all that was then due her; she elected to let the matter run on for eight months without action.

5. It is next contended that, as the question of the value of ▇▇▇ the security was raised by defendant on motion to discharge the attachment on the property, and in opposition the plaintiff contended that the security had become valueless without her fault, the overruling of the motion, from which no appeal was taken, constituted an adjudication of the issue.

While the order refusing to dissolve the attachment was appealable (sec. 9731, Rev. Codes 1921) and became final on failure to appeal, in so far as the right of the plaintiff to have the property attached in an action wherein the complaint, on its face, alleged facts sufficient to constitute a cause of action, it did not determine the right of the plaintiff to maintain the action in the face of the prohibition contained in section 9467, after answer filed setting up the bar of the statute. The motion was heard only on the allegations of the complaint and affidavits filed by the parties. The authorities cited by plain-

tiff go no further than to hold that an order refusing to dissolve an attachment is *res adjudicata* as to the attachment and may be pleaded as a bar to a second determination of that question. (*Hall* v. *Harris*, 1 S. D. 279, 36 Am. St. Rep. 730, 46 N. W. 931; *Morganton Mfg. Co.* v. *Foy-Seawell Lumber Co.*, 177 N. C. 404, 99 S. E. 104.) The declaration to that effect in the second case cited is *obiter*, as the court declared it was "immaterial in the view taken by us of the case," and concluded: "We need not decide whether another motion to vacate could have been made upon new facts, as no such motion was made."

All that a court decides in denying a motion to dissolve an attachment is that the defendant's property shall be held *pendente lite* and to await the final decision of the cause itself; the court may, and did in this case, make provisional inquiry into the question of value, on informal affidavits, and consider matters necessarily presented on the final trial as to the right of the plaintiff to maintain the action; but that question, the question now presented, was not before the court on the motion, and the consideration given was informal in character and inconclusive in effect, and did not prevent the parties from drawing the same matters in question in the main action wherein the production of evidence and the consideration thereof is governed by the rules of practice. The decision on the motion was not *res adjudicata* as to the question here raised. (34 C. J. 763; 15 Cal. Jur. 112; *Denny* v. *Bennett*, 128 U. S. 489, 32 L. Ed. 491, 9 Sup. Ct. Rep. 134; *Lowe* v. *Swinehart Tire & Rubber Co.* (D. C.), 211 Fed. 165; *Cox* v. *Allen*, 91 Iowa, 462, 59 N. W. 335; *Watson* v. *Jackson*, 24 Kan. 442; *Brunson* v. *Merrill*, 17 Okl. 44, 86 Pac. 431; *Cross* v. *Ingle*, 105 Okl. 145, 231 Pac. 1066.)

The record contains substantial evidence to support the judgment of dismissal, and it cannot therefore be said that, under the law as declared above, the court erred in entering the judgment of dismissal.

The judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.