JONES, RESPONDENT, *v.* HALL ET AL., APPELLANTS.

(No. 6,751.)

(Submitted April 16, 1931. Decided May 21, 1931.)

[300 Pac. 232.]

*Mr. R. F. Gaines,* for Appellants, submitted a brief and argued the cause orally.

*Mr. D. J. Sias* and *Messrs. Hurd, Hall & McCabe,* for Respondent, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action to foreclose a mortgage was commenced by plaintiff against Hall and wife, mortgagors, Amos and wife, subsequent mortgagees, and others who defaulted.

The facts are that on January 22, 1917, the defendants Hall executed to the Dakota-Montana Mortgage Company, a corporation, a promissory note for $1,000 due November 1, 1920;

attached thereto were four coupon notes representing the interest due on the note at the rate of six per cent. per annum, payable on November 1 of the years 1917, 1918, 1919 and 1920; and to secure payment of the same, a mortgage dated January 22, 1917, upon real estate in Blaine county. The mortgage was recorded on January 29, 1917. The notes provided that after maturity the interest should be the highest contract rate allowed by the state in which the security was located. The mortgage provided that the interest after maturity should be twelve per cent. per annum. The note was indorsed by the payee to one John R. Raube of Fond du Lac, Wisconsin, and contemporaneously the payee, the mortgage company, by instrument dated February 10, acknowledged February 12, 1917, assigned the mortgage to Raube, and the same was recorded in Blaine county on March 6, 1917. Raube died; pursuant to probate proceedings the note and mortgage, on October 28, 1928, were assigned by Raube's executor to Bertha Pleuss, Herbert C. Raube, William C. Raube and Reinhold Raube, who later assigned the same to plaintiff— the assignments to plaintiff were delivered to her December 27, 1928. Under date of November 26, 1928, Bertha Pleuss swore to an "affidavit of renewal," which substantially complies with section 8267, Revised Codes 1921, in which she made the following allegation: "That the amount of the debt or obligation secured by said mortgage was the sum of $1,000, and that the amount thereof remaining unpaid at the time of this affidavit is the sum of $1,000 together with interest from November 1, 1920." This was filed for record with the county clerk of Blaine county on December 24, 1928. Three days later D. J. Sias, as attorney for Ida O. Jones, made a like affidavit in which he swore that the "amount thereof remaining unpaid at the time of this affidavit is the sum of $1,000 together with interest from November 1, 1920."

On March 29, 1929, Mr. Sias, as attorney for Ida O. Jones, the plaintiff, began an action to foreclose the mortgage. In the complaint it was alleged that Pleuss and Sias had made the affidavits referred to, and the same were annexed thereto

as Exhibits B and C. In the complaint it was alleged also that Fred C. Hall and Anna Hall, his wife, defaulted in the payment of the principal of the promissory note, but continued to pay interest upon the principal down to the first day of November, 1921, but have made no further payments of principal or interest.

The rule is well settled that inconsistency between two or more allegations contained in a single cause of action is fatal, if both cannot possibly be true as a matter of fact, and either is essential to make out a sufficient case. (1 Abbot's Trial Briefs, 656; *Reed* v. *Poindexter*, 16 Mont. 294, 40 Pac. 596; *White* v. *Hagbery*, 54 Mont. 593, 172 Pac. 1034.)

The defendants Hall answered, admitting the execution of the note and mortgage and that the instruments referred to in plaintiff's complaint had been filed for record; that they had not paid the indebtedness represented by the promissory note; other allegations were denied. They also pleaded that plaintiff's cause of action was barred by the provisions of section 9029, Revised Codes 1921. The defendants Amos answered, admitting that the defendants Hall had borrowed $1,000 from the mortgage company, and had executed a written promissory note evidencing the indebtedness, and that the exhibits annexed to the complaint are true copies of the documents which appear of record; but they denied that they had any knowledge or information thereof sufficient to form a belief as to many other essential allegations in the complaint. They also pleaded the bar of the statute. They alleged that on or about September 22, 1928, the defendants Hall had borrowed from them the sum of $606.60, and had executed and delivered to them a grant deed, which was intended as a mortgage to secure the sum loaned by them to the defendants Hall. The deed contains a description of the land described in plaintiff's mortgage.

The defendants Amos alleged that they did not desire a foreclosure of their mortgage, but stated that, in the event that it should be determined that plaintiff was entitled to a

foreclosure, they prayed that their mortgage be decreed to be superior to plaintiff's mortgage.

Plaintiff, by replies, denied the allegations contained in the several affirmative defenses of the defendants, but she did not deny the asserted claim of interest of the defendants Amos.

Upon the trial plaintiff introduced in evidence the principal note and the mortgage given to secure the same, as well as the assignments purporting to convey the same to her.

Over objection as to the competency of the evidence and the qualification of the witness to testify, R. S. Harbolt testified that at one time, not stated definitely, he had in his possession the $1,000 note, and that the interest was paid thereon "up to November 1, 1921." Also over objection he testified that Fred C. Hall and Anna Hall in November, 1920, executed five coupon notes evidencing the interest to become due on the $1,000 note; these being made payable November 1, of the years 1921, 1922, 1923, 1924 and 1925. Harbolt claimed the note payable November 1, 1921, had been paid; the other four, over objection, were received in evidence. They are dated at Great Falls, Montana, under date of November 1, 1920. Each is for the sum of $70, payable to the order of the Dakota-Montana Mortgage Company, and each recites that it is "interest due on that day [the date of its maturity] on my note of even date herewith." It is notable that the $1,000 note was signed by Anna Hall by mark, while the so-called interest notes introduced in evidence bear the purported signature "Anna Hall."

On cross-examination the witness said that he did not remember whether he had seen the "interest" notes signed or not. He saw Mrs. Hall sign the original note by making her mark. "I couldn't say that I ever saw her sign her name, just witnessed her mark," he said. He did not know how the note due November 1, 1921, was paid. His testimony on this vital point rests upon his having found a letter from The Dakota-Montana Mortgage Company, Plentywood, Montana, dated October 12, 1921, addressed to him at Chinook, saying: "Herewith we hand you the following interest and commis-

sion notes for collection." Included was "Fred C. Hall, $70," and after that there was written the word "Paid" in Harbolt's handwriting. He did not know, independently of this notation, that Hall had paid it or to whom Hall had paid it. A man named Carpenter, who was connected with the company, was there at about that time, and Hall might have paid it to him. He felt sure that Hall had paid it, because if Hall had not paid it he would not have marked it "Paid." These interest notes bear the following indorsement:

"Pay to the order of John Raube without recourse. The Dakota-Montana Mortgage Company, a corporation, By ———— Prest. Treas."

How the defendants Hall came to execute these $70 notes to the mortgage company, then a stranger to the title of the note in suit and the mortgage securing the same, is not explained. The so-called indorsement upon the notes is not signed by any officer of the mortgage company. There is no showing that the mortgage company was the agent of Raube, the owner of the note and mortgage. Harbolt testified that he collected the coupon notes which were originally attached to the principal note; and presumably he remitted these collections to the mortgage company, whose collection agent he seems to have been. And it may be presumed that the mortgage company remitted to Raube. To support this latter presumption we take into consideration the Pleuss and Sias affidavits. Further than this we cannot see our way clear to go. There is no showing that the mortgage company was Raube's agent in 1921, or thereafter, even conceding it was his agent to collect the original coupon notes. We do not overlook the point, deducible inferentially, that the four interest notes were in the possession of Raube at the time of his death. There is no testimony that the mortgage company ever had the right to collect any of the interest notes; no showing that Hall paid the note, if he did pay it, to Raube or to an agent of Raube.

The general rule is that a part payment in order to effect an interruption of the statute or a revival of the debt must

be made to the creditor or someone authorized to act on his behalf. (37 C. J. 1170.)

Upon the $1,000 note appears: "Number W230," and on the interest notes appears "Loan No. W-230," but when these notations were placed upon these documents, or by whom, the transcript does not afford any information.

As has been seen, the interest upon the $1,000 note, after maturity, was agreed to be the highest contract rate allowed by the laws of this state. In 1917 that rate was twelve per cent., in 1920 ten per cent., per annum. Note the provision in the mortgage. The "interest" notes are at the rate of seven per cent. per annum. These notes specifically say they apply to a note of "even date herewith." There is not any explanation in the pleadings, or otherwise, with respect to this.

The defendant Hall testified positively that the last payment he made on account of the $1,000 was the note due November 1, 1920. He said that he did not know anything about the $70 coupon notes. Mrs. Hall testified that she never paid anything on the mortgage contract.

In view of the many discrepancies which appear, the want of ▮ testimony on essential points, the testimony of the defendants, and of the renewal affidavits of Pleuss and Sias which state positively that the interest on the $1,000 note was paid to November 1, 1920, only, it appears that there is a decided preponderance of the evidence against the court's finding that Hall and wife "continued to pay interest on the principal sum down to the first day of November, 1921," and that "there is due plaintiff from defendants Hall the sum of $1,000 with interest thereon at the rate of ten per cent. per annum from the first day of November, 1921." Unless the defendants Hall did make a payment upon the $1,000 note on November 1, 1921, it was barred by the statute of limitations (if pleaded) when this action was commenced. If the note ▮ was barred by the statute of limitations when the affidavits of renewal were filed by Pleuss and Sias, the affidavits were of no avail.

Our attention is called to the cases of *Morrison* v. *Farmers & Traders' State Bank,* 70 Mont. 146, 225 Pac. 123, *Corwin* v. *Brainard,* 80 Mont. 318, 260 Pac. 706, and *Vitt* v. *Rogers,* 81 Mont. 120, 262 Pac. 164, where we said that Chapter 27, Laws of 1913, now section 8267, Revised Codes 1921, is in effect a statute of limitations operating as an amendment of section 8243, Revised Codes 1921, and from this plaintiff's counsel argue that the affidavits of renewal extended the life of the obligation. But upon reference to the history of section 8243, as given in *Berkin* v. *Healy,* 52 Mont. 398, 158 Pac. 1020, and *Vitt* v. *Rogers,* supra, and considering the reasons for the enactment of section 8267, it is plain that the argument is not sound. These reasons are given in the *Morrison Case,* the *Corwin Case* and the *Vitt Case.* Section 8267 affects merely the lien of the mortgage; it does not extend the life of nor affect the debt which the mortgage is given to secure.

A mortgage is simply a lien fixed upon property as security for the payment of a debt or the performance of an act. (Sec. 8246, Rev. Codes 1921; *Barth* v. *Ely,* 85 Mont. 310, 278 Pac. 1002.) Section 8243 made the life of the mortgage depend upon the existence of the debt or performance of the act it secures without restriction. Section 8267 places certain limitations upon the life of the mortgage, although the debt may survive or the act be not completed. To that extent section 8267 amended section 8243. But the mortgage cannot exist beyond the life of the debt or obligation it is given to secure.

In this case, when the debt died (if it did), the mortgage died with it. To that extent section 8243 remains unchanged.

It follows that the judgment in favor of plaintiff cannot stand, but we do not see our way clear to dispose finally of the case upon the record before us. We prefer to order a new trial. Plaintiff may thereupon amend her complaint, if she shall be so advised, and defendants may answer the same. Upon the trial additional evidence may be received which may remove from doubt essential points.

The judgment is reversed and the cause remanded to the district court of Blaine county for a new trial.

Associate Justices Galen, Ford, Angstman and Matthews concur.