HUMBIRD et al., Respondents, v. ARNET et al., Defendants; FOSS et al., Appellants.

(No. 7,353.)

(Submitted April 15, 1935. Decided April 30, 1935.)

[44 Pac. (2d) 756.]

*Messrs. Gibson & Smith,* for Appellants, submitted a brief;
*Mr. Fred L. Gibson* argued the cause orally.

*Mr. Frank Arnold, Mr. Rockwood Brown* and *Mr. Horace
S. Davis,* for Respondents, submitted a brief; *Mr. Davis* argued
the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the
court.

The plaintiffs, as testamentary trustees under the will of
John A. Humbird, deceased, appointed as such by the probate
court of Ramsey county, Minnesota, brought this action to fore-
close a real estate mortgage on lands in Park county.

The defendant Charles A. Arnet on November 29, 1916,
executed and delivered his promissory note in the sum of
$25,000, payable March 1, 1922, unto the Union Trust & Sav-

ings Bank of Spokane, Washington, and on the same day he made, executed, acknowledged and delivered to secure the payment of this note, the mortgage sought to be foreclosed in this action, which was recorded in the office of the county clerk of Park county on December 4, 1916. On January 8, 1917, the mortgagee bank indorsed the note, and, by instrument in writing, assigned the mortgage to the then trustees under the will of John A. Humbird, appointed as above stated. Thereafter, and prior to the commencement of this action, some of the original trustees died, and their successors were appointed by the court; they in turn died, and others were appointed in their stead who are now the trustees of this testamentary trust and plaintiffs in this action.

The defendant Arnet conveyed the mortgaged lands by deed to the First State Bank of Livingston on February 21, 1923. Thereafter the defendant Alban Bodine, as receiver for this bank, on March 25, 1924, by deed conveyed the lands to the defendant Mary Gludt, and again, as such receiver, on January 26, 1925, by further deed confirmed the previous conveyance to defendant Gludt. On July 19, 1930, Mary Gludt conveyed the lands to the defendant Y 5 Ranches, Incorporated, and on that day the Y 5 Ranches executed a note for $20,000 and a mortgage securing its payment to the Hill Cattle Corporation, defendant. Soon thereafter. this note was indorsed without recourse by the payee, and an assignment of the mortgage executed and delivered, together with the note, to the defendant Anna G. Bodine. This occurred on August 6, 1930. On January 30, 1931, the Y 5 Ranches, Incorporated, by deed conveyed the lands to the defendant Chris Foss, subject to the mortgage for $20,000 to the Hill Cattle Corporation. All these various conveyances and the mortgage to the Hill Cattle Corporation were recorded soon after their execution, so that these several instruments were placed of record in the order of their execution. The assignment of the mortgage to the defendant Anna G. Bodine was not placed of record. As we have indicated, the various grantees, the mortgagee, the assignee thereof, the original mortgagor in the mortgage sought

to be foreclosed, and Alban Bodine were all made parties defendant.

The pleadings are voluminous and comprise in excess of 265 pages of the typewritten transcript. Plaintiffs, in addition to the usual allegations in the foreclosure complaint, including those with reference to the various appointments of the testamentary trustees under the will of John A. Humbird, deceased, sought to avoid the effect of sections 8264 and 8267, Revised Codes of 1921, by alleging that from the time of the conveyance by the defendant Alban Bodine, as receiver of the First State Bank of Livingston, to the defendant Mary Gludt, he was in truth and in fact the actual owner of the lands and premises; that Mary Gludt held the title to them as a trustee; that all of the conveyances and the mortgage thereafter made were without consideration, fraudulent and void; and that the defendant Alban Bodine during all this period of time, notwithstanding the various conveyances and the mortgage, occupied the mortgaged premises, operated the same as his own, without let or hindrance on the part of any of the record owners, and disposed of all the products of the ranch for his own use and benefit, and accounted therefor to no one. It was further alleged that at various times prior to March 1, 1930, after the conveyance to Mary Gludt, Bodine paid the interest on the mortgage sought to be foreclosed, and made payments on the principal aggregating the sum of $10,000; that he sought and secured informal extensions of the mortgage indebtedness, and thereby lulled plaintiffs into the belief that a formal extension, either by agreement pursuant to the provisions of section 8264, Revised Codes 1921, or an affidavit of renewal as provided by section 8267, Id., was unnecessary, in that, it was alleged, plaintiffs were all nonresidents of the state of Montana, had never resided within the state, and were unaware of the provisions of the statutes of Montana relative to the extension and renewal of real estate mortgages. Plaintiffs sought to foreclose their mortgage and to have it decreed that the lien thereof was superior to the claims of all the parties defendant.

Service of process in the action upon the defendant Mary Gludt was by publication. She made no appearance, and her default was entered. The other defendants all answered separately, denying the allegations which we have briefly summarized, and pleaded the bar of the statutes of limitations, viz., sections 9029 and 8267. Separate replies were filed to these separate answers, seeking to avoid the effect of these statutes as to all of the defendants, with the exception of the defendant Arnet, the original mortgagor. These replies reiterated the allegations found in the complaint which we have reviewed supra, and alleged that the defendants were estopped to avail themselves of these statutes. The cause was tried before the court without a jury.

The defendant Arnet, after his conveyance to the First State Bank of Livingston, made no further payments on the mortgage indebtedness of either principal or interest, and as to him the court found that the action was barred by the general statute of limitations. (Sec. 9029, Rev. Codes 1921.)

The evidence disclosed that the collection of principal and interest on the mortgage indebtedness was handled by the mortgagee bank, or its successor, as agent for the plaintiffs. Aside from the matter of granting of informal extensions, the plaintiffs had but little to do with the handling of this mortgage. It developed at the trial that in the year 1929, the officers of the bank, then the agents of the plaintiffs, were advised by their counsel in Montana somewhat in detail with reference to the provisions of sections 8267 and 8264 and other statutes, and hence the issue in the case raised by the pleadings on that score was thereupon without further importance in the case.

Prior to the trial the depositions of a number of the defendants were taken and were used on the trial. Other defendants were called as witnesses, and plaintiffs' case in the main is made up of the testimony of these adverse witnesses. Other witnesses were called, it is true. Defendants offered no testimony and rested their case upon the evidence adduced by plaintiffs' witnesses.

The defendant Mary Gludt was the mother-in-law of the defendant Alban Bodine. She resides at Harvey, North Dakota, and visited the home of the defendants Bodine approximately one year before the conveyance was executed to her by her son-in-law as receiver of the First State Bank of Livingston. It appears that thereafter she was not present in Montana, although the record owner of the lands and premises mortgaged. According to the testimony of the Bodines, the only consideration for the conveyance from the receiver of the bank to Mary Gludt was the sum of from two to five hundred dollars handed him by the defendant Anna G. Bodine, his wife and the daughter of Mary Gludt. The evidence is undisputed that from that time on defendant Alban Bodine occupied and operated the mortgaged property through the medium of tenants up to the year 1927, and from that time on by his employees. Although Mary Gludt was the record owner of the property from the year 1924 until the year 1930, Alban Bodine did not at any time communicate with her relative to the conduct of the affairs of the ranch property, in excess of 2,000 acres in area. Defendant Anna G. Bodine testified that she did not communicate with her mother on these subjects.

The only explanation as to why the lands were conveyed to Mary Gludt in 1924 is found in the testimony of Anna G. Bodine, wherein she said that her mother at the time of her previous visit had expressed a desire to own lands in Montana. Although Alban Bodine operated the ranch during all these years, sold the grain produced either by himself or by the tenants, used the hay produced thereon, and pastured the grazing lands with his cattle, he kept no records of these transactions from which he could determine the revenue derived from his operations on the ranch. During this period of time he alone communicated with the bank, plaintiffs' agent, with reference to the mortgage indebtedness. He paid the taxes with his personal check. He paid all the interest maturing up to March 1, 1930, and at various times during the interim made payments on the principal, aggregating the sum of $10,000. All of these payments were made by him by personal check.

For many years prior to the year 1930, defendant Alban Bodine was the vice-president of the Hill Cattle Corporation. In 1927 his son, Howard Bodine, with the assistance of two friends, had incorporated, under the laws of Montana, the Y 5 Ranches, Incorporated. Alban Bodine explained that his son Howard desired to enter the cattle business and had incorporated this corporation, but that before 1930 the son had departed, and although not one of its officers, he had kept its books and appeared in general to control it. In July of that year, as we have indicated, a deed from Mary Gludt to the Y 5 Ranches, Incorporated, was executed and delivered. At the same time the note and mortgage to the Hill Cattle Corporation was executed by the Y 5 Ranches, Incorporated. At that time, according to the testimony in the record, Alban Bodine, the vice-president of the Hill Cattle Corporation, drew a check for $20,000, payable to the mortgagor, on the personal banking account of Walter Hill, of the Hill Cattle Corporation, in St. Paul, Minnesota, which in turn was indorsed by one Hansen, the vice-president of the Y 5 Ranches, Incorporated, and the foreman of Alban Bodine's ranching operations on the mortgaged premises. Thereupon this check, following its indorsement, was delivered to Alban Bodine, who delivered it to his wife, the defendant Anna G. Bodine. Alban Bodine indorsed the note of the Y 5 Ranches, Incorporated, as vice-president and treasurer of the Hill Cattle Corporation, without recourse, and assigned the mortgage to his wife, who delivered the indorsed check to Alban Bodine. With the proceeds of the Walter Hill check, Alban Bodine secured from one of the banks in Livingston a cashier's check in the sum of $20,000, payable to the Hill Cattle Corporation, which was indorsed by Bodine as treasurer and thereafter indorsed by Walter J. Hill and deposited by Hill to his bank account in the bank upon which Bodine had drawn the original check to the Y 5 Ranches, Incorporated. This deposit was made approximately two days prior to the time the original check drawn on the account of Walter Hill was presented to the bank on which it was drawn for payment and paid.

Thereafter, in January, 1931, the title to the land being then in the name of the Y 5 Ranches, Incorporated, Alban Bodine entered into negotiations with reference to the transfer to the defendant Chris Foss, who operated a meat market at Gardiner, Montana, and had under lease at the time one of the Hill Cattle Corporation's ranches. The consideration for the transfer from the Y 5 Ranches, Incorporated, to the defendant Foss was to be $25,000, of which $20,000 would be paid by taking conveyance of the land subject to the mortgage then existing. In order to effect this transfer and establish a consideration, Alban Bodine drew his check upon a bank in St. Paul for the sum of $5,000, which he delivered to Foss, the alleged consideration for this check being the personal note of Foss to Bodine for $2,900, and Foss agreed to sell and deliver to Bodine twenty-one head of pure-bred cattle in the fall of 1931. Foss indorsed the check of Alban Bodine drawn on a St. Paul bank, and deposited it to his credit in the bank at Gardiner. Foss gave Bodine his check for $5,000 on the bank at Gardiner, with which Bodine procured a draft on the Chase National Bank of New York for a like sum from a bank at Livingston. This draft was payable to the St. Paul bank on which Bodine had drawn the check in favor of Foss. Upon its receipt by the St. Paul bank it was credited to the account of Alban Bodine. This credit was obtained to the account of Bodine prior to the time his check to Foss was presented for payment and paid. Thus we have detailed the alleged considerations for these various transfers, the mortgage, and the assignment of the mortgage.

The trial court made elaborate findings of fact. It found that the defendants Y 5 Ranches, Incorporated, and Chris Foss were not subsequent purchasers within the meaning of section 8267; and that the conveyance from Mary Gludt to the Y 5 Ranches, Incorporated, the conveyance from the Y 5 Ranches, Incorporated, to Chris Foss, the mortgage from the Y 5 Ranches, Incorporated, to the Hill Cattle Corporation, and the transfer of the note and mortgage of the Y 5 Ranches, Incorporated, by the Hill Cattle Corporation to Anna G. Bodine,

were all without consideration, fraudulent as to the plaintiffs, and void. The court further found that the defendant Anna G. Bodine took and held title to the note and mortgage of the Y 5 Ranches, Incorporated, as trustee for the defendant Alban Bodine, and that Alban Bodine was at all times after March 25, 1924, the true owner of the real estate described in plaintiffs' mortgage. It further found that plaintiffs' mortgage was a lien upon the land superior to the claim of ownership by defendant Chris Foss, and superior to the lien of the Y 5 Ranches, Incorporated, mortgage to the Hill Cattle Corporation, assigned and held by Anna G. Bodine; that the affairs of the Y 5 Ranches, Incorporated, were dominated by defendant Alban Bodine; and that the corporation was used by him as a means of concealing the ownership of the premises described in plaintiffs' mortgage.

The court in its conclusions of law found that plaintiffs' right to foreclose the mortgage as against all of the defendants other than the original mortgagor was not barred by sections 8267 and 9029, and that the same defendants were estopped to rely on or set up these sections as a defense to this action. A decree was entered foreclosing plaintiffs' mortgage in accordance with the findings of fact. The appeal is from the judgment.

The defendants assign error upon the findings of fact and conclusions of law mentioned supra, and further specify as errors that the evidence is insufficient to support these findings and the judgment. These numerous specifications of error are not separately discussed in the briefs of counsel in view of the fact, as we assume, that many of them are interrelated and may be disposed of by a consideration of certain principles of law and their application to the facts.

The primary questions presented for solution are: (1) Was the defendant Mary Gludt a trustee holding title to the mortgaged lands and premises for the sole use and benefit of the defendant Alban Bodine? (2) Were the subsequent conveyances, and the mortgage and assignment of the mortgage thereafter made, fraudulent and void as against the rights asserted

by plaintiffs? And (3) does the making of payments on principal and interest on a mortgage indebtedness interrupt, or prevent the running of, the statutes of limitation when made by one who is the owner of the mortgaged lands, but who has not assumed and agreed to pay the mortgage indebtedness, when the right of action on the debt is barred as to the original obligors? We will now proceed to consider these three questions in the order stated, together with others incidental to their solution.

As we have observed, the only consideration paid for the ▬▬▬ conveyance from the receiver of the First State Bank of Livingston to Mary Gludt was the sum of from two to five hundred dollars, handed by her daughter, the wife of the defendant Alban Bodine, to him, he then being the receiver of the bank. No one assumed to testify that Mrs. Gludt had furnished any part of this uncertain sum of money. In fact, the source of this money is not altogether clear; but if we assume that in this transaction between the husband and wife the funds so delivered were those of the wife, in such circumstances the presumption is that any advancement by a wife to her husband is a gift. (*Bast* v. *Bast,* 68 Mont. 69, 217 Pac. 345; *Roman* v. *Albert,* 81 Mont. 393, 264 Pac. 115.) The rule as to resulting trusts declared by section 6785, Revised Codes 1921, is subject to the exception that where the property is purchased with money of a husband or wife and the title placed in the name of the other, the presumption, rebuttable in character, is that the conveyance is made as a gift. (*Clary* v. *Fleming,* 60 Mont. 246, 198 Pac. 546; *Roman* v. *Albert,* supra.)

From the day of this conveyance until the day of the trial of this cause, the defendant Alban Bodine exercised the exclusive control and dominion over these mortgaged lands and premises; he accounted to no one for his management, preserved no records of his transactions from which he might be able to segregate the conduct of the affairs of this property from his other transactions, paid interest on the principal of the mortgage indebtedness, and paid the taxes—all with his personal checks.

Section 6785, Revised Codes 1921, provides that "when a ▉ transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." This section has been many times under consideration by this court, and recently in the case of *Stauffacher* v. *Great Falls Public Service Co.*, ante, p. 324, 43 Pac. (2d) 647, we quoted with approval what was said by this court in previous decisions touching upon the scope and effect of this statute, as follows: "This section was formerly section 1312, Civil Code of 1895, and was considered by this court in *Lynch* v. *Herrig*, 32 Mont. 267, 80 Pac. 240, and what was there said with reference to this statute was quoted with approval in *Eisenberg* v. *Goldsmith*, 42 Mont. 563, 113 Pac. 1127, 1129, wherein questions pertinent to this inquiry were determined by the following language: '(1) That the statute above "is but declaratory of the common law." (2) "That, in order to raise a resulting trust, the payment of the money as the consideration for the purchase of the property must be made at the time or before the legal title to the property passes to the party to be charged in the trust capacity, and that any moneys paid or contracts or agreements made thereafter are not sufficient to raise a resulting trust." (3) "The statute of frauds has nothing to do with the case." (4) "This resulting trust does not arise from, or depend on, a contract or agreement between the parties. It is independent of any contract and arises by operation of law from the fact that the consideration for the purchase of the property was paid by one person, and the title to the property purchased, taken in the name of another." (5) "While the agreements or contracts between parties do not of themselves form the basis of any relief as to the trust, they may be important for consideration in assisting to establish the fact of the ownership of the money and how it was invested." But the one fundamental idea running through the statute is that the money paid was in fact the money of the person who claims the existence and benefit of the trust. It is immaterial whether the payment was made by

him personally or for him by another; but in either instance the payment must have been made with his money.' "

Applying these principles to the facts in the case at bar, we conclude that upon the conveyance of these lands and premises to the defendant Mary Gludt a resulting trust at once arose in favor of the defendant Alban Bodine, and that thereafter and at all times until her conveyance of the property, her sole interest therein was that of a holder of the legal title in trust for the sole use and benefit of Bodine.

We pass now to the second question. It is contended by plaintiffs that the transfers and encumbrances created subsequent to the conveyance to Mary Gludt are void as being fraudulent under the provisions of section 8603, Revised Codes 1921. It is argued by the defendants at the outset that the right to set aside a fraudulent transfer may be asserted only by a creditor, and that since the obligation has become barred by the statute of limitations as against the original mortgagor, and in view of the fact that none of the other defendants ever assumed this obligation or agreed to pay it, there is no existing relation of debtor and creditor, and hence no creditor who may assert the right to set aside the fraudulent conveyance. The right, however, to set aside fraudulent conveyances as recognized by section 8603 does not inure to the benefit of creditors alone, but it also includes transfers and obligations incurred "with intent to delay or defraud" creditors and "other persons of his demand." The right to set aside fraudulent conveyances was first recognized by the Statute of 13 Elizabeth, at common law. That statute, like our own, made such conveyances fraudulent, not only as to creditors but as to others as well. The courts look with disfavor on fraudulent conveyances, and as a general rule they have construed statutes such as our own liberally, so as to include within their protection all persons who have interests of which they may be defrauded. (12 R. C. L. 490.) By the provisions of section 4 of the Revised Codes 1921, we are commanded to construe statutes liberally, with the view to effect their objects and to promote justice. The plaintiffs here have a sufficient interest

in the premises to permit them to assert the invalidity of the conveyances in question as against the defendants.

Fraud in cases where it is sought to set aside fraudulent ██ conveyances, and thereby reach assets on behalf of the creditor or other person claiming to be entitled to such assets, is ordinarily indicated and adjudged by the presence of what the law has come to denominate as "badges of fraud." They are said to be facts which throw suspicion on a transaction, and which call for an explanation. It has been said that they are inferences drawn by experience from the customary conduct of mankind, and that they afford grounds of inference from which the court or jury are authorized to conclude that a transaction surrounded by them is fraudulent. More simply stated, they are the signs or marks of fraud. They do not of themselves or *per se* constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative and not absolute. They are not usually conclusive proof; they are open to explanation. They may be almost conclusive, or they may furnish merely a reasonable inference of fraud, according to the weight to which they may be entitled from their intrinsic character and the special circumstances attending the case. Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent. (Moore on Fraudulent Conveyances, 222.)

The following are some of the badges of fraud generally recognized by the authorities: A fictitious consideration for a conveyance (27 C. J. 484; Moore on Fraudulent Conveyances, 229) ; false statements made of the consideration for a conveyance or mortgage (27 C. J. 485; Moore, supra, 225) ; a transfer made in anticipation of a suit to be commenced (27 C. J. 488; Moore, supra, 238) ; an excessive effort to give the transaction the appearance of fairness and regularity and to conceal its real nature (27 C. J. 493; Moore, supra, 246) ; the retention of the possession of the property transferred after conveyance as before (27 C. J. 494; Moore, supra, 247) ; and the reserva-

tion of a trust to the use of the same person after the conveyance as before (27 C. J. 495; Moore, supra, 248).

The foregoing badges of fraud may, we think, be reasonably inferred from the evidence in this case. Badges of fraud have heretofore been considered by this court, and held to be sufficient to warrant a judgment setting aside conveyances as fraudulent. (*Roman* v. *Albert,* supra; *Hart-Parr Co.* v. *Schafer,* 73 Mont. 429, 236 Pac. 675.)

As to the other conveyances antedating the conveyance to the defendant Foss, clearly there was no consideration for them, as is indicated by the facts set forth in the foregoing statement. As to Foss, after the conveyance was made to him, Alban Bodine continued in possession of the mortgaged premises as before, continued to conduct his affairs without change, and was no more accountable to Foss for the manner in which he handled the premises than he was to any of the other record holders of the title. The supposed consideration was the promissory note for $2,900 given by Foss to Bodine, and the alleged sale of twenty-one head of pure-bred cattle for $2,100. Admittedly, these cattle were not delivered prior to the commencement of this suit. It is said that under the agreement by which they were to be sold, delivery was not to take place until the fall of 1931, and this suit was commenced in May of that year. There is some evidence by the interested defendants that delivery was made in the fall as agreed. It does appear, however, from the evidence that Foss was leasing other lands from the Hill Cattle Corporation of which the defendant Alban Bodine at the time of the trial and since the year 1932 was president. The alleged delivery was made to Bodine, if at all, by delivering the cattle to one of the company ranches, and at the time of the trial they had not been sold or removed from the county. Furthermore, the transaction which we have detailed in the statement, relative to the manner of issuance and handling of checks and drafts in connection with this transfer, is a strong indication that the transfer was without consideration. The parties went to great length to give the transaction the color of being genuine. As a matter of fact, however,

it had its inception in the check issued by Bodine, and before that check was presented for payment to the bank on which it was drawn, the proceeds, in a transmuted form, were there awaiting to create a compensating credit. We think that in this state of the record, the evidence does not preponderate against the court's finding that the conveyance to Foss was without consideration, or against its findings with reference to the mortgage and conveyances being fraudulent in character.

We now approach the last question. Since we have determined that the defendant Alban Bodine was the real owner of the land, and that Mary Gludt was the trustee holding the land for his sole use and benefit, and that the conveyances thereafter made and the encumbrance by way of mortgage were all fraudulent and void, Alban Bodine, having acquired his interest within the eight-year period following the maturity of the mortgage indebtedness, cannot be heard to assert the invalidity of this mortgage under the provisions of section 8267, supra, if the mortgage debt is not barred by the general statute of limitations, section 9029. (*Turner* v. *Powell*, 85 Mont. 241, 278 Pac. 512; *Reed* v. *Richardson*, 94 Mont. 34, 20 Pac. (2d) 1054; *Hillsdale College* v. *Thompson*, ante, p. 400, 44 Pac. (2d) 753.)

The defendant Alban Bodine, as well as the other answering defendants, pleaded the general statute of limitations, section 9029. We held in *Reed* v. *Richardson*, supra, that a ''subsequent purchaser,'' within the meaning of section 8267, was not one who acquired the title to lands subsequent to the execution and recording of a mortgage, where the interest in the lands was conveyed to him within eight years after the maturity of the mortgage debt. In order to assert the invalidity of the mortgage because of the bar of the statute of limitations, he must plead the general statute of limitations, in this instance section 9029.

The defendants contend that, since the original mortgagor, the only person who signed the note secured by the mortgage, ceased making payments thereon after his conveyance to the

Livingston bank, the court having found that as to him the cause of action was barred, and since none of the answering defendants in any of their conveyances or encumbrances, including the defendant Alban Bodine, ever assumed and agreed to pay the mortgage debt, this obligation has ceased to exist and is no longer alive, and hence that plaintiffs' cause of action is barred. They urge in support of this contention the provisions of section 8243, Revised Codes 1921, as follows: "A lien is extinguished by the lapse of the time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation." The rule declared by this statute is not in accordance with the common-law rule. (*Berkin* v. *Healy*, 52 Mont. 398, 158 Pac. 1020, 1021.) It was there said that in enacting this statute, "we * * * adopted a rule contrary to * * * common law." In that case the court reviewed the history of this Code provision at length, and it appears, at least inferentially, from the discussion there that it was not altogether clear why the legislature of California, from whence we adopted this identical Code provision, changed the original draft of the Field Code as to this section, which was the source of the California Code in its present form, the original section of the Field Code having been a restatement of the common-law rule. It would appear that the reason for the change in the statute is manifest. At common law a mortgage was an absolute conveyance of real property. Under this conception of the nature of a mortgage, the mere extinguishment or the barring of the debt could not well operate as a reconveyance, and hence, even though the debt secured by the mortgage was extinguished, the mortgage would continue until such time as the mortgagor might be able to assert a title as against the mortgagee by adverse possession. Under our system of laws, we conceive a mortgage to create a lien merely, and not to operate as a conveyance. (*Barth* v. *Ely*, 85 Mont. 310, 278 Pac. 1002.) This was the rule before the adoption of the Codes in this jurisdiction. (*Gallatin County* v. *Beattie*, 3 Mont. 173; *Wilson* v. *Pickering*, 28 Mont. 435, 72 Pac. 821.) If we view a mortgage as only operating to

516

create a lien and as being an incident to the debt, it would logically follow that when the debt was extinguished, the incident would perish with it; hence the reason for changing the common-law rule in the enactment of section 8243 in its original form. We have said that when the debt secured by a mortgage is no longer alive the mortgage is thereby extinguished. (*Berkin* v. *Healy,* supra; *Vitt* v. *Rogers,* 81 Mont. 120, 262 Pac. 164; *Jones* v. *Hall,* 90 Mont. 69, 300 Pac. 232; *Hillsdale College* v. *Thompson,* supra.)

Plaintiffs contend that the payments of principal and interest made by the defendant Bodine up to March 1, 1930, operated to interrupt or prevent the running of the general statute of limitations as to the mortgage indebtedness as against the land mortgaged. By the provisions of section 9062, part payments of principal or interest are equivalent to a new promise in writing, duly signed, to pay the residue of the debt. The question thus presented, whether these payments, made by one who was not obligated in the first instance, and who has not assumed or agreed to pay specifically the debt secured by the mortgage, operate to interrupt the running of the statute of limitations, has been the subject of judicial consideration in a number of jurisdictions. With one exception, all the decisions which we have examined reach the conclusion that such payments do operate to interrupt the running of the statute of limitations, but are based on varying reasons which in some instances are not altogether clear. The exception to the conclusion reached by the majority of the courts is the case of *Frase* v. *Lee,* 152 Mo. App. 562, 134 S. W. 10. The reasoning of the court was that, since before the payments could operate to interrupt the running of the statute, it would have to be found that they amounted to an agreement to assume and pay the debt, and since the mere paying of interest on a mortgage which had not otherwise been assumed by the person making the payments did not amount to such an agreement, therefore he who made such payments was a mere volunteer, and accordingly there was no stoppage of the running of the statute of limitations. That the making of payments of interest by such

a person does not amount to a contract assuming to pay the mortgage indebtedness we have no doubt, although a number of courts have in whole or in part reached their conclusion, as we shall presently notice, upon the theory of an implied assumption of the mortgage debt. But one who has taken the title to property encumbered by a mortgage and enjoyed the possession of the premises, and in order to continue this enjoyment has made payments of interest and principal, cannot in our judgment be said to be a mere volunteer; hence we are unable to subscribe to the decision of the Missouri court in that respect.

The Kansas court, in the case of *M'cLane* v. *Allison,* 60 Kan. 441, 56 Pac. 747, held that payments of money made under circumstances such as appear in this case, with full knowledge of all the facts, are in the nature of an estoppel and bind the person making them to the admission of the validity of the debt, and furthermore that such payments constitute a binding admission that the land was subject to the mortgage and an agreement for its payment up to the value of the mortgaged premises—in other words, an implied assumption of an agreement to pay the mortgage debt up to the value of the mortgaged premises.

In the case of *Phifer* v. *Abbott,* 73 Fla. 402, 74 So. 488, the court arrives at the same conclusion as does the Kansas court, citing the Kansas case, supra, and section 1198 of 2 Jones on Mortgages, seventh edition, which text bases its statement upon the Kansas case. To the same effect is the case of *Medina* v. *Phelps,* 39 Colo. 92, 88 Pac. 848.

In *Crompton* v. *Jenson,* 78 Utah, 55, 1 Pac. (2d) 242, it was held, after citing the Kansas case, that one who made the payments in circumstances such as before us, may not be heard to say that the mortgage was barred by the statute of limitations, which conclusively demonstrates that the Utah court based its holding upon the theory of estoppel.

The Iowa court, in the case of *Fitzgerald* v. *Flanagan,* 155 Iowa, 217, 135 N. W. 738, Ann. Cas. 1914C, 1104, reached a conclusion in accordance with the trend of judicial opinion,

basing its decision in part upon the theory of an implied assumption of the mortgage indebtedness. As already indicated, we do not subscribe to the theory, under the facts before us, that one making payments of principal or interest upon a mortgage indebtedness thereby impliedly contracts to pay the amount thereof to the extent of the value of the land.

Plaintiffs argue that this question has heretofore been settled according to their contention in the case of *Turner* v. *Powell*, supra. The defendants assert, on the contrary, that the statements contained in that opinion, tending to support plaintiffs' theory, are mere *dictum*. It was there held that the debt, so far as the original mortgagor was concerned, was barred by the general statute of limitations. The mortgagors there pleaded the general statute of limitations, section 9029. The then owner of the land set up section 8267 as a bar, but did not plead section 9029, the general statute. In that portion of the opinion relating to the question whether the cause of action was barred as to the then owner of the land, the court first determined that under section 8267 one who had acquired the land by conveyance while the mortgage was yet good and valid, under the terms of section 8267, was not a "subsequent purchaser" within the meaning of that section and therefore not entitled to claim its benefits. Thereafter the court quoted from or cited the cases which we have reviewed, and some others to which we shall allude presently, and then said that the evidence of payment as made by the then owner was sufficient to prevent the running of the statute of limitations, and that the general statute of limitations, section 9029, was not pleaded, and if not pleaded, it was waived. After this court there decided that the owner of the land could not avail himself of the benefits of section 8267, we are unable to see where there was any further question left for decision. The further observations were additional reasons, doubtless, for the result, and the force of the additional observations made in the case of *Turner* v. *Powell* is somewhat lost as a result of the later opinion in *Reed* v. *Richardson*, supra, where we held that the

purchaser, if he would avail himself of the bar of the general statute of limitations, could and must plead it.

The first sentence of section 9467, Revised Codes 1921, provides that "there is but one action for the recovery of debt, or the enforcement of any right secured by mortgage upon real estate or personal property." Under this statutory provision this court has consistently held that the mortgaged property is the primary fund from which the mortgage debt must be collected by suit, and that until this primary source is exhausted or lost in some manner other than by the mortgagee's parting with the security for the purpose of evading the provisions of this section, the mortgagee may not proceed against the mortgagor for the debt. (*Barth* v. *Ely,* supra; *Leffek* v. *Luedeman,* 95 Mont. 457, 27 Pac. (2d) 511, 91 A. L. R. 286.) The California courts construing their section corresponding to section 9467 are in accord with our conclusion to the extent that the land is the primary source from which the mortgage debt must be collected; and for this reason alone they hold that the making of payments interrupts the running of the statute of limitations. (*Curtis* v. *Holee,* 184 Cal. 726, 195 Pac. 395, 397, 18 A. L. R. 1024.) In that case it was written: "While, under such circumstances, the grantee is not personally liable for the debt, nevertheless, in view of the fact that our laws render the land primarily liable for the payment of a mortgage debt (*Crisman* v. *Lanterman,* 149 Cal. 647, 87 Pac. 89, 117 Am. St. Rep. 167), the grantee of land subject to a mortgage, as long as he is the owner of the thing which is the fundamental source of satisfaction of the debt, is, to a limited extent, charged with the debt and interested in its payment. For this reason the grantee of the mortgagor who takes subject to a mortgage is not such a stranger to the mortgage or the mortgage debt that he cannot, while he is the owner of the mortgaged property, extend and continue the same as against himself and his successors in interest."

The Washington court finds itself in accord with the majority rule, and reaches its conclusion, in part at least, upon the

reasoning of the California case, from which it quotes liberally in the case of *Liebl* v. *Schaeffer*, 134 Wash. 168, 235 Pac. 26.

The Nebraska court, in the case of *McLaughlin* v. *Senne*, 78 Neb. 631, 111 N. W. 377, 378, after citing the rule that in an action *in personam* to toll the statute, the payment must be made by the debtor himself or his agent, then said: "But that rule has no application where the proceeding is *in rem*, as it is in this case so far as the mortgagees contesting for priority are concerned. In such case the question is, not whether the payment was made by someone having authority to bind another, but whether it was made by someone having power or authority to bind the property. One of the legal incidents of a mortgage is the right of the holder of the legal title to redeem from the mortgage, and this carries with it the right to make payments on the mortgage debt from time to time to protect the equity of redemption. This right of itself is authority to bind the property by payments on the debt."

We therefore conclude that, since under our law the land is the primary source from which the mortgage indebtedness must be collected in the event of foreclosure, the holder of the title has the right to the possession, the right to redeem, and the right to make payments on the mortgage debt; and furthermore, since we have accorded to the subsequent owner the right to plead the general statute of limitations, and as it is provided by section 8750, Revised Codes 1921, that "he who takes the benefit must bear the burden," that payments of interest and principal, or either of them, interrupt and prevent the running of the statute of limitations.

The plea of the general statute of limitations made on behalf of the answering defendants, except as to the defendant Arnet, was not sustained by the proof, and the court properly decreed the foreclosure of plaintiffs' mortgage.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.